## CHARLES A. PHELPS

*v.*

## THE ILLINOIS CENTRAL RAILROAD COMPANY.

1. CARRIER—*exemption from liability by reason of military control.* Where a railroad company was under the military control of the government of the United States, and operated by its officers in the transportation of troops, munitions of war and supplies in the suppression of the late rebellion, so that it was not in the free and unrestrained exercise of its francise: *Held,* that the company was not liable as a common carrier for refusing to receive freights for transportation, it not being safe to undertake their carriage.

2. SAME—*where freight is accepted for transportation.* A railroad company can not be excused for delay or neglect to transport freight, on the ground of military interference on the part of the United States, where it accepts the same with a knowledge at the time that it could not properly transport the same, on account of such interference.

3. SAME—*estoppel.* An agreement by an agent of a railroad company to furnish cars, at a future day, in which to transport grain, and to receive and ship the same, will not estop the company, when sued in tort upon its common law obligation to receive and carry the same, from showing its right to refuse to receive the grain, owing to the military control of its road by the officers of the army of the United States.

4. SAME—*pleading and evidence.* Where a carrier is sued in an action on the case, to enforce a common law liability for not receiving grain for

transportation, if relieved from that liability, the plaintiff can not recover upon a contract to furnish cars and receive the grain for carriage. The contract can avail no further than as a question of fact of governmental control, as relieving from the common law duty.

5. LIMITATION—*to new cause of action introduced by amendment of the declaration.* Where an original declaration against a common carrier declared only upon the common law liability for refusing to receive grain when tendered for transportation, and afterwards, under leave of court, additional counts were filed for not carrying the grain after its acceptance, and the defendant pleaded the Statute of Limitations, that the cause of action in the new counts did not accrue within five years before such counts were filed, it was *held*, that the defendant had the right to file such plea, and that it was error to sustain a demurrer to the plea, the additional counts introducing an entirely different cause of action.

6. ESTOPPEL. It is an element of an *estoppel in pais* that there must have been a representation concerning some material fact. An agreement of an agent of a railroad company to furnish cars, and receive and ship grain at a future time, is no admission of a common law obligation to receive and ship the grain when offered, and presents no estoppel on the company to deny the existence of such duty at the time the grain is offered for shipment. The rule might be different in a suit upon the contract itself.

APPEAL from the Appellate Court for the Third District. On judgment reversing the judgment of the Circuit Court of McLean county.

Messrs. WELDON & BENJAMIN, for the appellant:

The real cause of action was the not carrying the goods; but a common carrier is not bound to act as a mere warehouseman. It is not liable for a mere refusal to receive. It is the not carrying which is the real cause of complaint. The cause of action is the same, whether the pleader states that the common carrier refused to " receive and carry " the goods, or, that it having received the goods, did not carry them.

What constitutes a common carrier, may depend upon facts; but the facts have nothing whatever to do with the pleadings. Where the pleadings show the same cause of action, it is immaterial what the facts may prove on the trial, and the question under consideration relates solely to the amendment of the pleadings. If the ruling of the circuit court as to the amend-

ment was right at the time it was made, in view of what was then before it, it is right now.

"Whenever an entire verdict shall be given on several counts, the same shall not be set aside or reversed on the ground of any defective count, if one or more of the counts in the declaration be sufficient to sustain the verdict." Rev. Stat. 782, sec. 58.

The judgment was reversed by the Appellate Court on the ground—for the first time taken in this series of grain cases—that the action should have been *ex contractu,* and not in case. If the defendant was a common carrier, it must be conceded that case was the proper action. The company was certainly a common carrier before the war. It was so held in *Illinois Central Railroad Co.* v. *Morrison et al.* 19 Ill. 136. In the *McClellan case* the court held that it still retained that character after the war commenced. 54 Ill. 73; *Cobb, Christy & Co.'s case,* 64 id. 133. The only effect of the so-called military control is to add another cause exempting the company from its liability as a common carrier to those already existing by the common law.

During the war the liability could be excused in three ways, namely: by the act of God, by the act of the public enemy, and by the prevention of the military authority. So, also, its liability might then, as well as now, be modified by special contract between the parties; but in neither of these cases is the form of action affected.

Inasmuch as the company did not at the time of the transaction inform the plaintiff that it could not receive his grain by reason of the military orders, but, on the contrary, promised him from day to day to furnish cars for its carriage, and thereby induced him to continue purchasing, shelling, sacking and delivering corn for shipment, it is now estopped from changing its ground. *Pickard* v. *Sears,* 6 Adol. and Ellis, 469; *The People* v. *Brown,* 67 Ill. 435; *Kinnear* v. *Mackey,* 85 id. 98; *Hill* v. *Epley,* 31 Pa. 334; *Anderson* v. *Armstead,* 69 Ill. 454.

Messrs. WILLIAMS, BURR & CAPEN, for the appellee, after stating the facts of the case, made the following points, among others:

1.   A common carrier is one who carries for all alike, and if a carrier is compelled by law to give preference to any one, such compulsion deprives it of ability to receive as a *common carrier*, and releases it from the obligations of a common carrier to receive from all alike.   Angell on Carriers, secs. 68, 123, 125, 129, and cases cited; Story on Bailments, sec. 495; 2 Redf. on Railways, 3, 9, 67; Bouvier's Law Dic., art. "Common Carrier;" *Dwight* v. *Brewster*, 1 Pick. 50.

2.   A common carrier is one who is bound to carry for all who offer the accustomed freight, and offer to pay the accustomed charges.   2 Redfield on Railways, 67, 116, 117.

3.   A common carrier is only bound to provide reasonable facilities for doing the ordinary business required by the public to be done on its line, and is not required to provide for an unseen emergency, or an unexpected accumulation of freight.   *C. & C. U. R. R. Co.* v. *Rae,* 18 Ill. 488; *Wibert* v. *New York and Erie Railroad Co.* 2 Kern. 245; *Conger* v. *H. R. R. R. Co.* 6 Duer, 375; Story on Bailments, sec. 591 (a); 2 Redf. on Railways, 163, sec. 173.

4.   There must be freedom of action before there can be responsibility for that action.

5.   If the State, as the law-making power, takes control of the person, or means of transportation of the carrier, and compels him to act under its direction, he ceases to be a free agent, and as long as this coercion continues, he is not a common carrier.   *Bliven* v. *Hudson River Railroad Co.* 35 Barb. 188; *Hadley* v. *Clark,* 8 T. R. 259; Angell on Carriers, sec. 293.

6.   At the time of the grievances complained of, appellant was not a common carrier.   *Illinois Central Railroad Co.* v. *Ashmead,* 58 Ill. 487; *Same* v. *McClellan,* 54 id. 58; *Same* v. *Cobb, Christy & Co.* 64 id. 123; *Same* v. *Cobb, Blaisdell & Co.* 72 id. 148; *Same* v. *Hornberger,* 77 id. 457.

7.  If the law assumes control of the property, this excuses the carrier. Authorities under point 5.

8.  The Illinois Central railroad is a military highway, under the control of the government of the United States. U. S. Stat. at Large, IX, 466; sec. 19, charter of this company; Purple's Stat. II, 1362; 2 Redf. on Rys. 653-655.

9.  The President, by act of Congress, had authority to take military possession of this road, and place the entire road, with its machinery and officers, under military control. Act of Cong. Jan. 31, 1862; 12 Stat. at Large, 334.

10.  The President did take military possession of the road, its officers and machinery, as to all shipments to Cairo, during the time of the grievances complained of. See authorities under No. 6.

11.  A carrier is bound to receive only as he professes to carry. *Johnson* v. *Midland Railway Co.* 4 Exch. 367 (6 Eng. Ry. Cases); 2 Redf. on Railways, 116-118, sec. 165.

12.  A carrier is not responsible for a delay occasioned by the fault of a third party. *Conger* v. *Hudson River Railroad Co.* 6 Duer, 375.

13.  Under the facts in this case the government and those having government orders for transportation, had preference, and occupied the entire facilities of the road, and plaintiff has no right to complain for not getting cars. Cases under No. 6.

14.  The relation of common carrier does not arise in any case until the goods are delivered to and accepted by the carrier for immediate shipment, or, at least, tendered for immediate carriage. A contract to carry at a future time does not establish any common law duty or trust, and the remedy for breach of such contract can only be upon the contract. *Illinois Central Railroad Co.* v. *Smyser*, 38 Ill. 354; Cooley on Torts, 640; *Reed* v. *P. W. & B. R. R. Co.* 3 Houst. 176; *Wright* v. *Geer*, 6 Vt. 151; *Merriam* v. *H. & N. H. R. R. Co.* 20 Conn. 354; *Blanchard* v. *Isaacs*, 3 Barb. 388; *Tower* v. *U. & S. R. R. Co.* 7 Hill, 47; 2 Black. Com. 451-2; *Wil-*

*liams* v. *Peytavia,* 4 Mort. (La.) 304; *McHenry* v. *P. W. & B. R. R. Co.* 4 Harring. 448.

15.   In suits against the common carrier, when the cause of action is founded upon a contract and not upon the common law duty, the action must be upon the contract, and *case* will not lie. *Hollister* v. *Nolen,* 19 Wend. 234; *Thurman* v. *Wells,* 18 Barb. 500, 517; *McDermott* v. *M. C. & B. Co.* 38 N. J. L. 53.

16.   Even under the contract as claimed in this case, only the relation of a private carrier was created. *Fish* v. *Clark,* 49 N. Y. 122; 2 Redf. on Rys. 1; Story on Contracts, sec. 752 (a).

17.   *Allegata and probata* must agree.   Cases under 15th point, also *Chicago and Alton Railroad Co.* v. *Michie,* 83 Ill. 427; *Moss* v. *Johnson,* 22 id. 633, 640; *Crittenden* v. *French,* 21 id. 598; *Chicago, Burlington and Quincy Railroad Co.* v. *Chamberlain,* 84 id. 333.

18.   Even where case will lie for damages occasioned by breach of contract, the state of facts from which the alleged duty arises, and upon which the right of recovery is based, must be set up in the declaration.   If a party seeks to recover by reason of a contract, he must plead that contract, in whatever form he may bring his action.   *Frink* v. *Potter,* 17 Ill. 406; *American Express Co.* v. *Pinckney,* 29 id. 392, 408; *J. M. & I. R. R. Co.* v. *Worland,* 50 Ind. 339; *N. O. J. & G. N. R. R. Co.* v. *Pressley,* 45 Miss. 66; *Alinger* v. *McChesney,* 7 Leigh, 660; *Butler* v. *Livermore,* 52 Barb. 570; *Mann* v. *Birchard,* 40 Vt. 326; *Wright* v. *Geer,* 6 id. 457; *Vail* v. *Strong,* 10 id. 457; *Graves* v. *Severins,* 40 id. 636; *I. & C. R. R. Co.* v. *Remmy,* 13 Ind. 518; *Thurman* v. *Wells,* 18 Barb. 500; *Kimball* v. *R. & B. R. R. Co.* 26 Vt. 247; *Lake Shore and Michigan Southern Railroad Co.* v. *Perkins,* 26 id. 247; *McDermott* v. *M. C. & B. Co.* 38 N. J. L. 53; *Lake Shore and Michigan Southern Railroad Co.* v. *McDonough,* 21 Mich. 165; *Weall* v. *King,* 12 East, 452; *Max* v. *Roberts,* 12 id. 89; *Ireland* v. *Johnson,* 1 Bing. N. C. 162; *Burnett* v. *Linch,* 5

Barn. & Cr. 589; *T. W. & B. R. R. Co. v. Constable,* 39 Md. 149; *Austin* v. *Manchester, etc. R. R. Co.* 5 Engl. and E. 329; *Cabell* v. *Vaughn,* 1 Wm. Saund. 291; *Walcott* v. *Canfield,* 3 Conn. 194; *Pollard* v. *Thomason,* 5 Humph. 56; *Hewison* v. *New Haven,* 34 Conn. 136; *Masters* v. *Stratton,* 7 Hill, 101; *Wilbur* v. *Brown,* 3 Den. 356; *Weed* v. *S. & S. R. R. Co.* 19 Wend. 534; 1 Ch. P. 384, 135; 3 Stark. Ev. 1548; Angell on Carriers, sec. 440; 2 Greenl. Ev. 208; 1 Saunders Pl. and Ev. 692.

19. A cause of action that is barred by the Statute of Limitations can not be vitalized by amending or adding new counts to a declaration in a suit brought upon another cause of action. *Illinois Central Railroad Co.* v. *Cobb et al.* 64 Ill. 128, 140.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action on the case, commenced on the 9th day of February, 1870, by Charles A. Phelps, against the Illinois Central Railroad Company, as a common carrier of goods from Bloomington and Heyworth, in this State, to Cairo, for refusing to receive and carry corn tendered for carriage by plaintiff to defendant, in February, March and April, 1865.

The first count in the original declaration averred the tender of corn at Bloomington, to be carried to Cairo, and that it was the duty of defendant, as a common carrier, to receive and safely carry the same. The breach assigned is that defendant did not nor would receive and carry the corn.

The second count made the same averment; the breach assigned being that defendant did not nor would receive or carry.

The third count averred that defendant had a side-track and stations at Bloomington, on which it was accustomed to place cars for persons desiring to ship property, and that it was its duty so to place them when notified; that plaintiff so notified and requested defendant, but it neglected and refused to place cars on said track to be loaded with corn by plaintiff.

The fourth, fifth and sixth counts were like the first, second and third, respectively, except that they substitute Heyworth in the place of Bloomington. This declaration was filed August 17, 1870.

The pleas to it were the general issue, and the Statute of Limitations—that the cause of action did not accrue within five years before the commencement of the suit.

On the 13th day of March, 1871, plaintiff filed two additional counts to the declaration, having on the 10th day of that month obtained leave of court for that purpose.

The first of these counts avers that defendant received at Heyworth, from plaintiff, corn to be carried to Cairo, which it was its duty to carry and safely deliver; the breach is, that it did not carry and transport the corn to its place of destination within a reasonable time.

The second count avers that defendant received and permitted to be loaded upon its cars at Heyworth the corn of plaintiff to be carried to Cairo, and that it was defendant's duty so to carry it and safely deliver it to plaintiff at Cairo, which it neglected and refused to do, but permitted it to remain at Heyworth until it was spoiled.

To the additional counts defendant pleaded the general issue, and that the causes of action stated were other and different from the causes of action declared on in the original declaration, and that the same did not accrue within five years before filing or having leave to file the additional counts.

To the latter plea, of the Statute of Limitations, plaintiff demurred, and the court sustained the demurrer, and defendant stood by the plea. Upon trial had of the issues of fact the plaintiff recovered, and on appeal by defendant to the Appellate Court for the Third District the judgment was reversed, and the present appeal is by plaintiff from the judgment of the Appellate Court.

We regard this case as disposed of essentially under former decisions of this court.

There have been a series of former cases before this court where, upon the state of facts presented by this record, we have held that during that time when this plaintiff offered the corn for shipment, the Illinois Central railroad was under the military control of the government of the United States, and that the road was operated by its officers under the direction and control of the officers of the army in the transportation of troops, munitions of war and supplies in the suppression of the rebellion. That during that period the company was not in the free and unrestrained exercise of its franchise, and that the interference of the government had, to some extent, suspended the functions of the company as a common carrier. That the road was so far under governmental control that the company could not be held liable for refusing freights when it would not be safe to undertake their carriage, or for discrimination in consequence of military orders. The cases are: *Illinois Central R. R. Co.* v. *McClellan,* 54 Ill. 58; *Illinois Central R. R. Co.* v. *Ashmead,* 58 id. 487; *Illinois Central R. R. Co.* v. *Cobb, Christy & Co.* 64 id. 128; *Illinois Central R. R. Co.* v. *Hornberger,* 77 id. 457. It appears that by consent of parties the defendant introduced in evidence the testimony appearing in the printed abstracts in the foregoing cases in this court, so that the same state of facts appearing in those cases was shown in this.

It must be taken as settled, by these former decisions, that there was no liability here of the defendant as a common carrier for refusing to receive the corn which was offered for carriage. That was expressly decided in the *Ashmead* and *Hornberger cases,*—that there was no liability for the refusal to receive. But it was held in the other cases, that if the company thought proper to receive freight, and issue its bills of lading therefor without containing any exception as to the governmental control, that then it would be acting as a common carrier, and would be subject to the liability attaching to that function.

Some special features of the present case are to be considered.

There is a question as to the correctness of the decision of the Appellate Court that the causes of action described in the additional counts, to-wit, failure to carry, after having received the corn for carriage, were barred by the Statute of Limitations, because the evidence showed that they accrued more than five years before these counts were filed.

The solution of the question depends upon whether the additional counts set up entirely new causes of action.

In *Illinois Central R. R. Co.* v. *Cobb, Christy & Co.* above cited, this court said: " Counsel for appellees cite various authorities for the purpose of showing that courts should be liberal in allowing amendments for the purpose of avoiding the running of the statute (of limitations). These authorities, however, are cases where the amendment was for the purpose of restating the cause of action in the pending suit, and not for the purpose of introducing a wholly new and different cause of action." The causes of action declared on in the original declaration in the present case were for a failure to perform a common law duty by a common carrier,—to receive and carry goods offered for carriage. The causes of action stated in the additional counts are for failing to carry and safely deliver goods which defendant had received for carriage as a common carrier. The former were for refusing to enter upon the performance of the duty of a common carrier; the latter were for the failure to complete the performance of the duty of a common carrier, the performance of which had been entered upon. Under the circumstances of this case, and our former decisions, the distinction is vital,—there being no liability for refusing to receive and carry, but only for not carrying, after having received the freight. The receipt is a necessary element of the cause of action. The original declaration negatived such receipt; the amended one averred it.

We are disposed to agree with the view taken by the Appellate Court, that there were wholly different causes of action

declared on in the original and amended counts of the declaration, and that the evidence showing that the causes of action described in the additional counts accrued more than five years before those counts were filed, they were barred by the Statute of Limitations.

There is a claim of a right of recovery in the present case because of an alleged contract made with plaintiff by Mr. Forsythe, the general freight agent of the company, in February, 1865, to furnish cars within a reasonable time thereafter to carry plaintiff's corn to Cairo.

We do not see that such a contract would form a ground of recovery in this suit.

We can not do better than to repeat here what was correctly said by the Appellate Court in their opinion in this case:

" The suit is not brought on a contract, but in tort for a failure to perform a common law duty. Where the duty exists by law, and the party contracts for its performance, suit may be brought either upon the contract, or in case for the non-performance of the duty imposed by law; but where the law imposes no duty, or, as in this case, the party is for the time being relieved from its performance, and he contracts to do what the law does not require him to do, independent of the contract, the only remedy is upon the contract." The contract, not being declared upon, could not be a basis of recovery in the present action. It can avail no further than as evidence upon the question of fact of governmental control.

It is urged, however, that by such contract the company would have held themselves out to the world as common carriers, which would be equivalent to the receipt of the property in the cases of *McClellan*, and *Cobb, Christy & Co.*, and that within the principle of the decisions in those cases, that from the receiving of the freight the company came under the liability of common carriers, the company assumed the same responsibility of common carriers in this case, by the making of such a contract to furnish cars. We do not think the cases

sustain this position. In those cases the company had received and taken into their own possession the goods for transportation, and issued bills of lading therefor in the usual form, without stipulation against the contingency of military control, by which it agreed to deliver the goods to the consignee at Cairo. The suits were for not delivering in a reasonable time. In the one case, it was said, had the company "not intended to assume such responsibility, (of common carriers,) they should have refused to receive the grain, or limited their liability by their bills of lading;" and in the other, that the company, "having received this corn upon its cars as a common carrier, and under a contract to deliver it in Cairo, and knowing, too, the liability of corn in cars to be damaged in a few days at that season of the year, was bound to deliver it at its destination in a reasonable time. This it did not do." And again: "As soon as this blockade began along the road, it was not only the right of the company, but its plain duty, to refuse to receive more corn for shipment until its line was clear. On no principle of law can it be excused for accepting corn which it knew at the time it could not properly transport. The more imminent the peril to the freight, the greater was the obligation of the carrier to refuse it, except upon a special contract," and that the carrier voluntarily assumes the risk when he accepts the shipment without condition.

This must suffice to show that a mere agreement to furnish cars at a future time for the transportation of grain, comes quite short of the facts which formed the ground of liability declared in the former cases, and is not enough to bring the present case within the principle of those decisions.

It is urged, further, that such an agreement should have the operation of an estoppel upon the company in this case. It is considered as an element of an *estoppel in pais* that there must have been a representation concerning some material fact. The only material thing here which it is important for the plaintiff that the company should be estopped to deny, is,

its liability as a common carrier, under its common law duty as such, to receive and carry this grain at the time it was offered for shipment. It is not necessary to consider what might be the effect in a suit upon the contract itself, but in this suit, in tort upon the common law duty of the common carrier to receive and carry the grain, it is not perceived how this antecedent agreement to furnish cars, and receive and ship the grain at a future time, can be set up as an estoppel to the defence that, when the grain was afterwards offered for shipment, the common law obligation of a common carrier to receive and carry goods offered for carriage was not at that time upon the company, in respect to this grain. The agreement was no admission of such common law obligation, and we can not see why it should be held as an estoppel upon the company to deny the existence of it. It indicated the company's belief that it would be able to receive and carry the grain, and, as already intimated, might be evidence tending to show there was no impediment in the way of carrying, from military control. This we think to be the extent of its force in this case.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT dissenting.