11 491
41 609

## THE WABASH, SAINT LOUIS AND PACIFIC RAILWAY COMPANY

### v.

### CHARLES D. McCASLAND.

1. COMMON CARRIER—DELAY IN TRANSPORTATION.—When a common carrier receives cattle for transportation it is his duty to carry them to their destination within a reasonable time, and for a failure through gross negligence to do so an action will lie, whether the shipment was made under a special contract or not.

2. ACTION INDEPENDENT OF CONTRACT.—In such a case the owner of the property has a right of action independent of any contract he may have, and he is not bound to sue upon his contract or to set it out in his declaration.

3. PLEAS—EVIDENCE UNDER GENERAL ISSUE.—Where matters of defense set up by special pleas might be given under the general issue, such pleas are obnoxious to special demurrer.

4. EXCUSE FOR DELAY.—While nothing but the act of God or the public enemy will excuse a carrier from the ultimate delivery of property intrusted to his care, he is not to the same extent liable for every delay in reaching the point of destination.

5. INJURY TO STOCK IN TRANSPORTATION.—A carrier of live stock is not responsible for injuries resulting from what is termed their own "proper vices," and especially is this so when by the shipping contract the owner or his agent is obliged to accompany them and take the care and oversight of them while in transit.

6. DELAY A QUESTION FOR THE JURY.—Whether there was delay in transportation is a question for the jury, and it was error to instruct the jury that if the carrier received the cattle with knowledge of the obstruction which caused the delay, then the carrier could not relieve itself from liability on account of the obstruction, and in that case they should find for the plaintiff.

7. HYPOTHETICAL QUESTIONS.—Hypothetical questions in the nature of

expert testimony have no place in a suit of this character; and questions allowing the witnesses to base their estimate of damages upon facts and circumstances for which the defendant was not responsible should have been excluded.

APPEAL from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.   Opinion filed October 24, 1882.

Messrs. BROWN, KIRBY & RUSSELL, for appellant; that the action must be upon the contract, cited I. & C. R. R. Co. v. Remmy, 13 Ind. 518; Davidson v. Graham, 2 Ohio St. 131; C. B. & Q. R. R. Co. v. Hale, 2 Bradwell, 150.

A common carrier is not an insurer against delays, but as to them may be excused by accident or misfortune although not of the class denominated inevitable: I. & St. L. R. R. Co. v. Jutgen, 10 Bradwell, 295; Hutchinson on Carriers, § 330; Parson v. Hardy, 14 Wood, 216; Wibert v. R. R. Co. 2 Kernan, 245; Wayer v. Burchard, 99 Mass. 521; M. C. R. R. Co. v. Burrows, 33 Mich. 6; P. C. & St. L. R. R. Co. v. Holowell, 65 Ind. 194; Story on Bailments, § 545; G. & C. R. R. Co. v. Rae, 18 Ill. 488; Ill. Cent. R. R. Co. v. McClellan, 54 Ill. 58; M. C. R. R. Co. v. Curtis, 80 Ill. 324; P. Ft. W. & C. R. R. Co. v. Hazen, 84 Ill. 36.

Mere opinions as to amount of damages are not ordinarily to be received:   Harger v. Edmunds, 4 Barb. (S. C.) 256; Giles v. O'Toole, 4 Barb. (S. C.) 261.

Mr. M. T. LAYMAN, for appellee; that common carriers can not contract against their own gross negligence, cited Ill. Cent. R. R. Co. v. Adams, 42 Ill. 475; Ill. Cent. R. R. Co. v. Morrison, 19 Ill. 136.

Against the right of carriers to impose conditions before receiving freight: Baxter v. Lamont, 60 Ill. 237; Ill. Cent. R. R. Co. v. Morrison, 19 Ill. 136; Chicago R. R. Co. v. Volk, 45 Ill. 175; Gray v. Gillian, 15 Ill. 453; M. S. & N. I. R. R. Co. v. Day, 20 Ill. 375; Hancock v. Yunker, 83 Ill. 208; Milliken v. Jones, 77 Ill. 372; Thomas v. Caldwell, 50 Ill. 138; Stobie v. Dills, 62 Ill. 432.

Carriers can not exempt themselves from the exercise of

reasonable care: Adams Ex. Co. v. Stettauer, 61 Ill. 184.

The action need not be brought upon the contract: Ill. Cent. R. R. Co. v. Phelps, 94 Ill. 548.

McCulloch, J.  This was a suit for damages resulting from unreasonable delay in carrying a lot of cattle from Berlin, in Sangamon county, to Chicago.  Having received the cattle as a carrier, the law imposed the duty upon appellant to carry them to their destination within a reasonable time, and for a failure through gross negligence to do so, an action on the case will lie whether the cattle were shipped under a special contract or not, for the carrier can not contract against his own gross negligence.    Arnold v. I. C. R. R. Co. 83 Ill. 273; I. C. R. R. Co. v. Phelps, 4 Bradwell, 238; same case, 94 Ill. 548.

In such case, the owner of the property having a right of action independent of any contract he might have, would not be bound to sue upon his contract nor to set it out in his declaration.    The declaration in this case was sufficient at common law, and the mere fact that there was a contract of shipment did not drive appellee to the necessity of suing upon it. The contract is no bar to the action in the present form.

The matters set up in the special pleas to which the court below sustained the demurrer, could all be given in evidence under the plea of not guilty, in so far as it was lawful for appellant to contract in that behalf.    The demurrer was special, assigning as the cause of demurrer, that the matters pleaded could be given in evidence under the general issue.    The court below sustained this view.    Appellee under this decision got or could have had the full benefit of whatever evidence he had upon the matters so pleaded.    There was therefore no error in sustaining the demurrer to the special pleas.    City of Champaign v. McMurray, 76 Ill. 353; Wiggins Ferry Co. v. Blakeman, 64 Ill. 201; Hartford Fire Ins. Co. v. Olcott, 97 Ill. 439.

On the 3d day of July, 1880, appellee first spoke for cars to ship his cattle to Chicago.    On the 4th of July, about eleven o'clock in the forenoon they arrived in Berlin, after a drive of about seven or eight miles.    A cattle train was due about ten or eleven o'clock that night.    The cattle were put on board

certain cars at Berlin, about eight o'clock, to be shipped by that train.  Owing, however, to high water in the Mississippi river, which had washed out part of appellant's track, the train was obliged to come by another road and did not arrive at Berlin until about four o'clock on the morning of the 5th.  The cattle in question went forward by that train, and arrived at the stock yards at Chicago about eight o'clock in the evening. The usual running time for a cattle train between the two points was from fifteen to eighteen hours.

There can be no recovery in this case, grounded upon a fall in the market price of cattle between the 5th and 6th of July, for there is no proof upon that point.

It is claimed, however, that the cattle ought to have arrived in time for the market of the 5th, but that in consequence of the unusual delay they were in bad condition upon arrival; that one had lost its horn through violence; that others were wounded and bloody; that all were overheated and shrunken, in consequence of which they had lost more in weight than they would have done if forwarded in due time and without delay, and appellee was compelled to sell them at a much less price per hundred weight than he would have been had they gone upon the market in good condition.

While it is true that the carrier is bound to insure the ultimate delivery of property intrusted to his care, against everything but the act of God or the public enemy, yet he is not, to the same extent, responsible for every delay in reaching the point of destination.   His duty to safely deliver property imposes upon him the duty of preserving it, and if delays occur in transit, occasioned by causes beyond his control, his duty is to preserve the property, even if delay in transmission should be the consequence.   P. Ft. W. & C. R. R. Co. v. Hazen, 84 Ill. 36; I. & St. L. R. R. Co. v. Jutgen, 10 Bradwell, 295.   It is also true that a carrier of live stock is not responsible for injuries resulting from what are termed their own " proper vices," and especially should this be so, when from the terms of the shipping contract, the owner or his agent is obliged to accompany them, and take the care and oversight of them while in transit.   Such provisions are doubtless binding upon the parties.   I. & St. L. Ry. Co. v. Jury, 8 Bradwell, 160.

In this case the cattle were loaded in appellant's cars about eight o'clock in the evening, to be forwarded by a train, due between ten and eleven o'clock. This was done with the consent of appellee's agent, and it does not appear whether or not there was anything unreasonable in that. But there being no objection made by appellee's agent, he can not now complain of it. The only cause of complaint that appellee has, is that the train was delayed before reaching Berlin, from eleven o'clock at night until four o'clock in the morning.

Had the train arrived at ten o'clock it could not have arrived at the stock yards before one o'clock in the afternoon of the next day. But it would have been no unreasonable delay if it had not arrived at Berlin until eleven o'clock, and if it had then consumed eighteen hours in making the trip, which the evidence shows was not unusual, it would not have reached the stock yards until five o'clock of the next day. This would have been two hours after the market closed, and appellee could not have made a sale until the morning of the 6th. The train arrived at the stock yards at eight o'clock on the night of the 5th, and the cattle were ready for market on the morning of the 6th. If appellee has any cause of action, it is for the damages resulting from the delay in starting from Berlin, and not from any delay in waiting for that train, or from delays on the way, or from injuries the cattle may have received from each other, or from shrinkage caused by extreme heat of the weather, from driving them through a hot sun to the station, or from keeping them for a number of hours in the pens before loading. It was, therefore, a question for the jury to determine from all the facts and circumstances, and under proper instructions of the court, had such been given, whether or not appellant was guilty of such negligence as would render it liable, and if so, what amount of damage appellee sustained by reason of such negligence.

But by the seventh of appellee's instructions, the jury were told in substance, that if appellant accepted the cattle with a knowledge of the obstruction caused by the overflow of the river, then it could not relieve itself from liability on account of such overflow, and in that case they should find for appellee.

This instruction virtually takes away from the jury everything there is in the case. It assumes that if appellant accepted the cattle with knowledge of the overflow of the river, by reason whereof its trains were delayed, of which fact the evidence leaves no doubt, then appellee's right of recovery was complete. The court could not assume that all other necessary facts existed to maintain appellee's cause of action in the first instance, nor in case the jury should find the special contract had been executed by appellee, that such facts existed as to still entitle appellee to recover. The issue should have been submitted to the jury, unincumbered as far as possible, with extraneous matter.

But the court, against the objections of appellant, admitted a number of hypothetical questions to be asked the witnesses, of which the following, propounded to Oliver Greene, a witness for appellee, are specimens: Q. Suppose cattle lotted in the evening at seven or eight o'clock and kept there till next morning in dry lot, in summer time, 3d or 4th July; cattle ready for market, weighing 1,450 to 1,500 pounds; the next morning driven seven miles to station and get there at eleven o'clock and remained there until seven or eight in the evening; were then put in cars, remained standing on track until four o'clock next morning and were then shipped to Chicago; got there at eight o'clock next evening; that one had its horn broken off, bloody, and blood on some of other cattle; that there were four or five loads, eighty in number; what would be the damage on sale of these cattle on market, per hundred, if any? I mean, would they sell for as much on the market in that condition as if shipped in the ordinary way. A. No sir; don't think they would. Q. What would be the loss per hundred? A. Droves would differ; any drove would be in worse shape having been shipped that way; some bunches twenty-five cents per hundred, others fifty cents. The extra shrinkage would be extra still.

The answers to similar questions put to other witnesses for appellee were still more damaging to appellant. Besides being merely hypothetical and in the nature of expert testimony for which there is no place in this suit, the questions

propounded allowed the witnesses to base their estimates of damages upon certain facts and circumstances for which, as before seen, appellant is in no wise responsible. All such questions should have been excluded by the court.

The error thus committed by the court is aggravated by the sixth instruction which tells the jury they are the sole judges as to the amount of damages, if any, the evidence may show the plaintiff has sustained, and by the eleventh, which tells them they may find whatever sum they may believe from the evidence the plaintiff is entitled to recover. While these instructions may not, strictly speaking, violate a correct rule of law, yet in view of the character of the evidence admitted and in the absence of any other instructions to guide the jury as to the correct measure of damages, it is hard to see how they could have been otherwise than misleading. Other instructions have been criticised by counsel for appellant, which were probably erroneous, especially those wherein appellant's apparent negligence could only be excused by the act of God or the public enemy. We have already stated the rules of law governing the case with sufficient precision to enable the court below to avoid similar errors on another trial.

Several questions discussed by counsel in their briefs have been considered and decided at the present term in W. St. L. & P. Ry. Co. v. Black, [*ante* 465] and it is not deemed necessary to again discuss them here.

For the reasons already indicated the judgment will be reversed and the cause remanded.

Reversed and remanded.