The Chicago, St. Paul and Kansas City Railway Co.

*v.*

James Ryan.

*Filed at Ottawa November 9, 1896—Rehearing denied March 4, 1897.*

1. Instructions—*a court may refuse to give duplicate instructions.* Where the court has already given a party a large number of instructions which cover fully all questions of law involved in the case, other instructions, though containing correct propositions of law, may be refused.

2. Pleading—*construction of pleadings is for the court.* Upon demurrer to a plea of the Statute of Limitations alleging that certain additional counts filed by plaintiff state a different cause of action from that set forth in the original declaration, the question of the identity of the causes of action set forth in the different pleadings is for the court, and not the jury.

3. Railroads—*duty of company to protect persons who must cross track to board waiting train.* Passengers obliged to cross railroad tracks to board a train standing at a station have a right to suppose that the railway company will regulate the movements of its trains on the tracks to be crossed with due regard to their safety.

*C., St. P. & K. C. Ry. Co. v. Ryan,* 62 Ill. App. 264, affirmed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. Dunne, Judge, presiding.

Gardner & McFadon, for appellant.

Duncan & Gilbert, for appellee.

Per Curiam: The brief and argument filed by appellant in the Appellate Court, with but a slight addition, have been filed in this court. We have carefully examined the argument and the points relied upon to reverse the judgment of the Appellate Court, and after a careful consideration of the entire record are of opinion that the judgment of the Appellate Court was right.

The alleged discrepancy between the facts as found in the statement of facts by the Appellate Court and the facts enumerated in the opinion we do not regard of any importance.

As to the objection that the court erred in refusing certain of appellant's instructions. It will be found upon an inspection of the record that no instructions were given for plaintiff, while the court gave fourteen instructions for the defendant. These instructions covered so fully all questions of law involved in the case that the giving of others was not required, and if the refused instructions did contain correct propositions of law (which is not conceded) the court did not err in refusing them.

The judgment of the Appellate Court will be affirmed, and the opinion of that court will be adopted as the opinion of this court. It, with the statement of facts, is as follows:

"On and prior to August 3, 1891, the Chicago and Northern Pacific Railroad Company owned and operated a terminal railroad extending to a point west of the city limits of the city of Chicago, east across Ashland and Ogden avenues to Harrison street and Fifth avenue, in said city. This railroad, and the terminal facilities connected therewith, were under the exclusive control of the Chicago and Northern Pacific Railroad Company. The Northern Pacific company arranged the time-table for running all trains and fixed the rules and regulations under which all trains operated on said road were run.

"The Chicago, St. Paul and Kansas City Railway Company, prior to August 3, 1891, had obtained a lease from said Northern Pacific company, under which it had the privilege of operating its trains between an intersection with said railroad west of said city to the Harrison street depot. Its trains were operated upon a time-table furnished it by the Northern Pacific company, and also under certain rules, and under a block system established on the said railroad. On the 3d day of August, 1891, the Northern Pacific company was operating a train which was due at Ogden avenue station to take on suburban passengers at 4:29 o'clock P. M. It was, however, five minutes behind time, and did not reach said station until thirty-four minutes after four o'clock, and was either just stopping or had just come to a stop when the accident happened to plaintiff, as complained of in this case. The plaintiff had reached the station at 4:29 P. M., before the arrival of the last named train that day, purchased a ticket for the said Northern Pacific train, and then went in a south-westerly direction, proceeding towards the rear of the train, for the purpose of taking the rear car of such train. The train of the Kansas City company had left the Harrison street depot on that day at the time fixed in the time-table of said Northern Pacific company, namely, 4:20 o'clock P. M. The train was run upon the time fixed in the said time-table, and was due to pass the Ogden avenue station on said railroad at 4:34 o'clock P. M. The movement of trains approaching Ogden avenue station was controlled and directed by a block signal station, that east of the station being located about 380 feet east of the Ogden avenue station. The railroad makes a rapid curve after leaving Ogden avenue station going west under the viaduct on Ogden avenue, and a train coming from the west could not be seen at a distance of more than 150 feet west of Ogden avenue station. When the Kansas City train reached the block signal station east of said Ogden avenue station, the

signals displayed were two; one notified that the track was clear, that there was no obstruction and to proceed at full speed, and the other notified it that the depot was unoccupied. The engine of this train met the engine of the Northern Pacific train at a point immediately opposite the center of the Ogden avenue station. The plaintiff, in going to the Northern Pacific train, was facing south-west and away from the Kansas City train. He stepped upon the north track when the Kansas City train was right upon him. The engineer did all that he could to stop the engine, but the plaintiff was struck and thrown against the Northern Pacific train and injured. The plaintiff testified that he was familiar with the locality; that he used the trains from that depot from two to four times a day. He also testified that he knew the Kansas City train which struck him passed there every day about the same time, and that it passed without stopping.

"The defendants filed pleas of the general issue, and to the additional counts, filed more than two years after the accident, pleas of the Statute of Limitations. The pleas of the Statute of Limitations each contained the allegation that the causes of action set up in the additional counts were other and different than those set forth in the declaration originally filed. Demurrers to the pleas of the Statute of Limitations were sustained. Upon the trial the cause was dismissed as to the Northern Pacific Railway Company, a verdict being rendered against appellant, upon which there was judgment for $6000.

"Waterman, J.: It is insisted that the demurrer to the pleas of the Statute of Limitations was improperly sustained, and that the defendant was entitled to have the question of whether the cause of action set up in the additional counts was other and different from that set up in the declaration first filed, tried by a jury, because, as is urged, the allegation that the said causes of action were other and different from those set up in the declara-

tion first filed presented a question of fact for the determination of the jury.

"A party cannot, by his pleading, determine the character of his adversary's pleas, nor is the construction of pleadings a thing to be submitted to a jury. The various counts of plaintiff's declaration were before the court, and it was for the court, upon an examination of such counts, to decide whether the cause of action set up in the additional counts was the same as that set forth in the declaration first filed, or other and different. In the case of *Phelps* v. *Illinois Central Railroad Co.* 94 Ill. 548, (4 Ill. App. 238-243,) it does appear that the plea of the Statute of Limitations contains the allegations relied upon here, and that a demurrer to such plea was wrongly sustained, but there is no intimation that it was because such allegation was in the plea that the demurrer thereto should have been overruled. On the contrary, the reason for the decision is not that a jury should have been allowed to determine as to the truthfulness of such allegation, but because, as the Appellate and Supreme Courts each find, the cause of action set up in the new counts was other and different from that declared upon in the first count.

"We think that the court below properly held in this case that the cause of action set up in the additional counts was the same as that set forth in the declaration first filed. Each count appears upon its face to be but a different way of stating the cause of action originally declared upon. The demurrer to the pleas of the Statute of Limitations was therefore properly sustained. *Dickson* v. *Chicago, Burlington and Quincy Railroad Co.* 81 Ill. 215; *Mitchell* v. *Milholland,* 106 id. 175; *North Chicago Rolling Mill Co.* v. *Monka,* 107 id. 340; *Blanchard* v. *Lake Shore and Michigan Southern Railway Co.* 126 id. 416; *Stearns* v. *Reidy,* 33 Ill. App. 246; *Fish* v. *Farwell,* 54 id. 457; *Swift* v. *Foster,* 55 id. 280; *Illinois Central Railroad Co.* v. *Campbell,* 58 id. 275.

"It is true that appellee did not sustain to appellant the relation of a passenger. It was not bound to exer-

cise the highest diligence to insure his safety. His right to go where he was proceeding and to be where he stood when struck was certainly the equal of that of appellant. All the world, corporations and individuals, owe a duty to strangers. No one can be reckless as regards the welfare of any with whom he may be brought into contact. Although the running arrangements for trains upon this road may have been made by the Northern Pacific Railway Company, yet appellant was a voluntary agent in acceding thereto. For reasons satisfactory to itself it ran its train as it did at the time of the accident. Appellant knew that for its train, while running at a rate of twenty-five miles an hour, to pass at a station a train there waiting to receive passengers was very dangerous to persons who might be crossing appellant's tracks to go to the waiting train. It knew that due regard for the rights and safety of intending passengers of the Northern Pacific Railway Company required that its stations should be approached and passed with care. The engineer of appellant's train, seeing the Northern Pacific train waiting at the station, had notice that persons were quite likely at such time to be crossing the tracks, as passengers were compelled to do in order to go to and from the trains of the Northern Pacific. Appellant at some time seems to have recognized these things by one of its rules in force at the time of the accident, which was as follows: 'Trains on double tracks, moving in either direction, must not under any circumstances pass a station without stopping at which a passenger train from an opposite direction is standing, receiving or discharging passengers. In approaching stations where a passenger train is due or past due, where the view is not clear, trains must be under perfect control, so as to stop if necessary before arriving at the station. The speed of trains must be so regulated that when passenger trains are on time they will meet between stations on double tracks.' Had this rule been obeyed the accident would not have happened.

"Was appellee exercising ordinary care? He had a right to suppose that appellant would substantially observe its own rule above set forth,—not that appellee knew of the existence of such rule, but that it is merely a statement of what a fair regard for the rights of those having occasion to go to or from the passenger trains of the Northern Pacific road required. There was a curve in the tracks near the place of the accident, so that we are unable to tell, from the evidence, at what distance in the direction appellant's train was coming appellee could see the approaching engine. He says that he did not see it. Ordinary care is such care as reasonably prudent and cautious persons exercise under like circumstances. (*Chicago, St. Louis and Pittsburg Railroad Co.* v. *Hutchinson,* 120 Ill. 587; *Chicago and Alton Railroad Co.* v. *Adler,* 129 id. 335.) Reasonably prudent people do frequently and habitually cross railroad tracks to go to a passenger train waiting at a station to receive passengers. The reasonably prudent and cautious person does not always take care to have knowledge of and bear in mind the times at which the trains of roads he is not accustomed to use pass the stations of the road which he does make use of. The ordinarily prudent person does, perhaps, look ere he crosses any railroad track to see that no train is approaching upon it; but in the present case it does not appear that it was because of a failure to so look that appellee was injured. As the stations and tracks of railroads are constructed in this country it is impossible in many cases for passengers to do otherwise than cross railroad tracks. Such was the case at Ogden avenue. Such was known to appellant, and it was its duty to so govern the movements of its trains as not to endanger the life of all who had occasion to cross at this point the tracks which it made use of.

"The jury were fairly instructed, and the judgment is not for an excessive amount. It is therefore affirmed."

*Judgment affirmed.*