(8 App. Div. 327)

### DORR v. McCULLOUGH et al.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1896.)

CONTRIBUTORY NEGLIGENCE—EVIDENCE.

A nonsuit will not be disturbed on the ground that plaintiff did not show freedom from contributory negligence, though the circumstances point as much to absence of contributory negligence as to its presence.

Action by Susan Dorr, as administratrix of Peter Dorr, deceased, against John G. McCullough, John King, and Eben B. Thomas, as receivers of the New York, Lake Erie & Western Railroad Company, to recover damages for the alleged negligent killing of plaintiff's intestate.  Plaintiff was nonsuited, and moved for a new trial, on exceptions ordered to be heard by the appellate division in the first instance.   Denied.

The intestate was struck by the pilot beam of an engine attached to a train of cars operated by defendants upon their tracks at the intersection of such tracks with William street.   The Erie tracks crossed William street in the easterly portion of the city of Buffalo.   There is a sidewalk on the north side of William street, from Queen street eastward.   The train causing the injury was passing eastward on the south track.   There was some evidence given tending to show that it was going at a speed of 22 to 25 miles an hour.   There was a flagman's shanty stationed near the crossing, and it is nearly straight across from the point where Queen street opens into William street. There is a line of telegraph poles along the tracks extending west from the point where the collision occurred, and there is another line of poles, telegraph or telephone, on the south side of William street, and wires strung on top of them extending west from the crossing; and on the same side of the street are short trolley poles from 12 to 15 feet high.   There was evidence tending to show that the poles to some extent would obscure one's vision looking to the west along the tracks.   It seems that the intestate was passing eastward on the north side of William street as he approached the crossing.   The witness Rohr says the intestate, when he was struck, was on the southeast side of the east-bound track on the north side of William street.   "The man was on the sidewalk just about a foot on the outside of the south rail of the east-bound track.   That was the furtherest rail to the south."   Witness was going towards the intestate.   He saw Wagner with the intestate; saw the intestate first on Queen street; saw him cross the street towards the sidewalk; and he saw the intestate and Wagner join, and, as they came from a point where they joined each other, they came towards the tracks on the north side of the sidewalk.   The witness saw them walking along towards the tracks, kind of slow.   The witness adds that he saw the intestate turn his head towards the train, looking westward towards the train, and he adds: "When he got there. he started on a run, very likely he had seen the train, and this boy ran across the tracks, and he (Dorr) kept on the sidewalk; and the boy jumped straight across that track, and that brought him nearer to the street, shortened the track, and Dorr kept on the sidewalk, and that made a longer turn than the boy had.   Likely, it made ten or twelve feet further that Dorr had got to clear to get past the train than the boy had.   The boy jumped across the track, and ran.   He couldn't tell exactly, but, as close as he could judge, they were along there between the two tracks.   He might have been on the west-bound, but he could not tell exactly the spot.   He didn't measure it to the

inch. As Mr. Dorr was struck, he was a foot or thereabouts south of the rail, outside of the track on which the engine was running. The pilot beam, where they put the flag in on top of the pilot, the beam projects out a foot or so further than the rail. He had cleared the rail, and this beam struck him." There was evidence that the flagman was present, and was engaged in the discharge of his duty. and that he, seeing the danger the deceased was in, hallooed to him. The witness further testified: "When Dorr and Wagner got down to the tracks or thereabouts, Dorr turned his head to the west, the way the train was coming. He kept on a couple of steps more at the usual gait they were going, but it seemed, when the train came closer to him, he (Dorr) ran. The distance from the point where he was between the two rails of the tracks themselves when he turned his head was about three feet to the east-bound track." In the course of the cross-examination, the witness said: "From the time witness saw Dorr coming towards him, he didn't turn his head at all until he got on the west-bound track, or between the west and east bound tracks. When he turned and looked at the train, he did nothing, but kept on a slow walk towards the east-bound track. Dorr turned his head back, and took a step or two, and then he (Dorr) went on a run. He began to run before he reached the east-bound track. Mr. Dorr began to run between the west and east bound tracks along in there. He continued to run until he passed the east-bound track. Then he stopped, and was hit, and that was all one could say; he stopped, or it seemed he did." The witness Wagner testified, viz.: "Joined Dorr about the middle of Queen street, on William street. From there he went with Mr. Dorr across the tracks. After he [Wagner] started from the middle of Queen street, he walked down to the tracks, and stopped to see if any trains were coming. It was west of the two tracks. That would be west of the west-bound track that he stopped. He was on the sidewalk. He stopped to look if there were any trains coming. He didn't see any. He next started for over the tracks. When he stopped, he was about ten of fifteen feet from the west-bound track. From the point where he stopped to see if there was any train coming, he started off for over the tracks, and got in the middle of the east-bound track; and the flagman hollered, and he looked up, and over his right shoulder, and saw the train coming, and he gave two or three steps, and he was over the tracks. * * * The flagman was around here somewhere when he hollered. * * * The flagman was about twelve feet from him. Witness was between the rails of east-bound track. He had to jump about four feet to get clear of the rails." At the close of the evidence, the defendant moved for a nonsuit, on the grounds: (1) That the plaintiff has not made out a cause of action; (2) that the plaintiff's intestate is not shown to be free from contributory negligence; (3) that it appears that the plaintiff's intestate lost his life in part at least through his own negligence; (4) that the plaintiff took the risk of crossing this track in front of the approaching train, which he could see and hear himself, and the consequences of the risk furnish no cause of action to the plaintiff here. The court granted the motion for a nonsuit. Plaintiff thereupon took an exception, and the exceptions were ordered heard in this court in the first instance.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Parker & Alexander, for plaintiff.

Sprague, Moot, Sprague & Brownell, for defendants.

HARDIN, P. J. Plaintiff was burdened with the duty of showing that the intestate was free from contributory negligence. No direct proof of freedom from negligence of the intestate was given, and the facts and circumstances disclosed did not warrant a finding by the jury that the intestate was free from contributory negligence. If we could assume upon the facts that it was sufficient to raise a doubt whether the intestate was free from contributory negligence, and that the circumstances pointed as much to the

negligence of the deceased as to its absence, or that the circumstances point in neither direction, we should not be permitted to say that the nonsuit was erroneous. Wiwirowski v. Railway. Co., 124 N. Y. 420, 26 N. E. 1023. After a careful study of the evidence, we are of the opinion that this is not a case where the court could reasonably "shut its eyes to apparent contributory negligence on the part of the intestate." The facts in this case differ from those in Waldele v. Railroad Co., 4 App. Div. 549, 38 N. Y. Supp. 1009. It may be regretted that the intestate was inconsiderate and incautious in his approach to the crossing, but, according to the rule of law laid down in the case to which attention has been directed, it must be held that the nonsuit·was properly granted, and the exceptions overruled, and judgment ordered in favor of the defendants.

Plaintiff's exceptions overruled, and motion for a new trial denied, with costs. All concur.