## Emma Clinton v. Albert M. Root.

*Negligence—Experts—Usage—River travel.*

1. Ordinary care and prudence in common emergencies is not a question for experts; and unless there is conflict it may often be taken from the jury as a matter of universal judgment.

2. Passenger traffic on river steamers is not so exclusively a maritime business that sailors alone are qualified to testify as to its methods and duties, but usage may sometimes be shown as bearing thereon.

3. Passengers about to embark upon a boat and with little time to spare are justified in assuming, if they do so in good faith, that they may safely follow the directions of the officers of the boat in getting on, unless there is very obvious danger in doing so. And if it takes an expert to define the duty of the officers, the presumption in the pasenger's favor is all the stronger.

Error to Saginaw. (Gage, J.) June 18.—Sept. 29.

CASE. Plaintiff brings error. Reversed.

*Holden & Harris* for appellant, cited as to liability, *Smith v. Lond. & St. Kath. Dock Co.* L. R. 3 C. B. 326.

*W. A. Clark* for appellee.

CAMPBELL, J. Plaintiff sued defendant as owner of the steamer Wellington R. Burt for an injury received in boarding the vessel at Zilwaukee. Immediately on the arrival of the steamer at the dock, the majority of those waiting got on board, and among them plaintiff, who is a lady of 48 years old, jumped from the dock to the gangway, and fell and broke her leg. The distance was not far from twenty inches, and the fall seems to have been occasioned by the motion of the boat. The steamer was making her last return trip up the river, and plaintiff who had gone down to Zilwaukee earlier in the day, was on her way home again. There was much and directly conflicting testimony upon the point whether the steamer was moored and her gang-plank put out at all or seasonably, and the same direct conflict on the question whether the clerk of the boat did or did not hurry up the passengers on the dock, and order them aboard, without waiting for the plank. A case has seldom appeared in this Court where there was so direct a conflict between apparently reputable witnesses. The jury, under the charge, found a general verdict for defendant, and also made some special findings. To the question whether it was practicable to put out a gang-plank before the plaintiff leaped from the dock upon the boat, they made no answer.

They found that the boat was made fast and a gang-plank put out as soon as could reasonably be done.

They answered the inquiry whether the boat had ceased to move forward when plaintiff jumped from the dock to the deck, that they were in doubt as to the forward movement.

The testimony was not conflicting on the fact that there was movement in some direction at that time.

The finding that the gang-plank was seasonably put out removes from the case that element of neglect, and leaves to

be considered such questions as arose on admission and rejection of evidence, and upon charges and omissions to charge.

There was no finding of the jury that plaintiff did not act upon the orders or assurances of the officers of the boat in getting on board as she did, and this was the principal question presented as the record stands. Connected with it are the instructions given or refused by the court upon contributory negligence. These points, which are dwelt upon by the brief for plaintiff, are not noticed by counsel for defendant. They are important.

Much testimony was introduced bearing upon the danger of failing to supply or use a gang-plank, and the rulings were not entirely harmonious. Captain De Land, who was shown to be a person of experience, while allowed to answer some questions as to danger at that particular time and place, was prevented from answering other quite as proper questions as to general usage and duty. These were not foreign to the inquiry, for it may depend very much on general usage whether the officers and hands of steamers will be expected to provide particular facilities. He was also allowed, under objection, to answer this question: " If you should regard it as carelessness in not putting out the gang-plank, is it not equally careless her getting aboard without the gang-plank ? " To this he gave a qualified answer, but one which may have had considerable weight with the jury under the charge concerning contributory negligence.

Whether it was negligence in the steamer's crew not to put out the plank was held by the court in various rulings to be a question only answerable by experts. The rulings in that direction confined the range of experts within bounds which may have been too narrow. But there can be no doubt that the question was one determinable more or less as one of usage and experience. No such criterion can be applied to the action of ordinary persons under given circumstances. Ordinary care and prudence in common emergencies is a matter to be determined by the opinions of the jury, who are in need of no help from experts to decide it. It is often so plainly a matter of universal judgment that courts may

act on it themselves and take it from the jury,—although not in case of conflict. But to treat it as belonging to the same category with matters of marine usage and duty was misleading and erroneous. In the same connection Elijah Powers, a sailor of experience, and for years familiar with the custom in regard to taking passengers aboard steamers, and who saw what occurred, was not allowed to answer whether " as that boat was, could they be taken on safely ? " or another similar question as to what was requisite for safety,—the exclusion being for want of evidence of sufficient knowledge. He certainly had testified to knowledge, and had shown an amount of experience which ought to have given it.

In view of some other instances of exclusion, it seems proper to refer to this subject further. The employment of river steamers in carrying passengers is not so exclusively a maritime business that knowledge of its methods and duties is presumably confined to sailors alone, or to sailors employed on river steamers. Many if not most of the persons employed on board are such as under the maritime law would be classed as landsmen. A knowledge of the incidents of the business is attainable for many purposes by any kind of experience which gives facilities and creates habits of observation. Many of the inquiries in the present case, which the court confined to sailors, and on which the jury were told they must accept the views of sailors, were quite as open to the view of other observers.

But the very fact that no one without some adequate knowledge could be allowed to express an opinion upon the duty of the steamer's men to provide safe means of access, must be equally significant in relieving inexperienced persons from a presumptive knowledge of the danger caused by the omission. The testimony in this case showed that it was a constant practice of persons seeking passage to do just as the plaintiff did, and if it could—as it evidently might—be regarded as dangerous, it was such an obviously frequent danger that it became a question of some importance in the case whether adequate or reasonable precautions were used against it, and how far, with or without invitation from the

officers, passengers could be deemed negligent in getting on board in that way, where no obstacle existed.

Upon this question of contributory negligence, the charge leaned so strongly against plaintiff that it is not at all unlikely it determined the verdict. It seems to have been held that there was evidence of such apparent risk that the invitation to go on board as plaintiff did would not exonerate her from considerable responsibility. After drawing some distinctions between the duty resting on children and grown persons to disregard dangerous invitations and commands, the court used this language: " If a person of ordinary care and prudence, of the age, intelligence and experience of this lady, would have hesitated,—would have seen that there was danger and would have hesitated,—or would have said, 'There is danger, and I will take the risk,' then there was contributory negligence on her part, and she could not recover. It is a question of fact for you to find. If you find that the defendant was seeking to make a proper landing there and did so; that these parties, before the defendant could make a proper landing, got aboard this boat, and this plaintiff went on board and was injured in consequence,—she cannot recover." There were several repetitions of the duty of applying the rule of ordinary care, which taken alone would perhaps be unobjectionable, but when the whole charge is taken together the force of an invitation to get on board, and the duty of plaintiff to refrain from doing so if dangerous, were not so dealt with as to give sufficient weight to the conditions of the case as presented.

Where passengers are at the appointed place for embarking, with no fences or gates to keep them back, they must generally have a right, if they do so in good faith, to assume that no dangerous orders will be given, and that they may safely act on the directions of those whose legal duty it is to protect them from risk, and who are supposed to know what is safe. Some allowance must also be made for such conditions as stand in the way of full deliberation. It is applying too harsh a rule to hold that persons who have apparently but a few moments to decide between following the directions of

the officers and losing their last chance of passage, should be held to be negligent in doing as they are invited to do, unless the danger is very obvious. The instruction complained of, which spoke of defendant's seeking to make a proper landing, did not include in the assumption the important element of knowledge or reason for belief of plaintiff that such attempt would be made. A knowledge of such purpose might make any act of impatience open to criticism, whereas a want of such knowledge, leaving every one where he or she must act on present appearances, would very much modify that responsibility as governed by the facts.

In our opinion the case was not so presented as to save plaintiff's rights from misconstruction.

The judgment must be reversed and a new trial granted.

COOLEY, C. J. and SHERWOOD, J. concurred.