court charged that the owner was not liable unless the nuisance was visible to him, and that the fact that the building department approved of the plans was a circumstance to be considered in his favor. Apparently, the rights of the defendant were properly guarded, and the record fails to disclose any error to his prejudice of which he can rightfully complain.

The motion for a new trial must be denied.

---

WALDELE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. April, 1896.)

1. RAILROAD CROSSING—ACCIDENTS AT CROSSING—NEGLIGENCE.
   In an action for the death of plaintiff's decedent in a collision at a railway crossing, at which four of defendant's main tracks, and also the tracks of another company, crossed a much-traveled street at grade, and at which defendant was accustomed to keep a flagman, there was evidence that just before the collision, which occurred in the morning, while it was yet dusk, the flagman left his post; that, as plaintiff approached the crossing, a freight train was passing; that there was a man at the crossing with a lantern, acting as flagman; that, after the freight train passed, he signaled that the tracks were clear; and that plaintiff, in attempting to cross, was struck by a train running at the speed of 40 miles an hour, in violation of a city ordinance. *Held,* that the question of defendant's negligence was for the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE — FAILURE TO DISCOVER APPROACHING TRAIN.
   The fact that decedent could have seen the train by which he was struck after he had gotten on the track next to the one on which the train was approaching does not, as a matter of law, render him guilty of contributory negligence, where it appears that, if he had seen the train, he would have had only a few seconds to determine his action in escaping the impending danger, as he not only had the right to rely on the flagman's assurance of safety, but also he may have mistaken the track upon which the train was approaching.

3. ACCIDENTS AT CROSSINGS—NEGLIGENCE—DESERTION OF POST BY FLAGMAN.
   Where the flagman, accustomed to be stationed by a railway company at a street crossing, deserts his post, and his place is taken by a third person, in determining whether a pedestrian was guilty of contributory negligence in attempting to cross the track, relying on false assurances of safety given by such person, the question whether such person was an employé of the company is immaterial.

4. ORDINANCES REGULATING SPEED OF TRAIN—CONSTRUCTION.
   An ordinance limiting the speed of trains "east of B. street," a much-traveled street, prohibits greater speed than allowed by the ordinance on any part of B. street.

5. OPINION EVIDENCE—SPEED OF TRAINS.
   Persons of ordinary experience with trains are competent to testify as to the speed of a train, and the question is not one for experts only.

Appeal from circuit court, Monroe county.

Action by Catherine Waldele, as administratrix, etc., against the New York Central & Hudson River Railroad Company. From an order denying a motion for a new trial on the minutes, after nonsuit, plaintiff appeals. Reversed.

Philip J. Waldele was an educated deaf mute, 47 years of age, residing on Madison street, in the city of Rochester. Just at daybreak, and between 6:35 and 6:40 a. m., of January 30, 1895, at the Brown street crossing in that

city, he was struck by an engine of defendant, and instantly killed. At that point, defendant's four main tracks cross the street at grade. The tracks of the Rochester & Pittsburg Railroad also cross Brown street immediately south of, and parallel with, the Central tracks. The trains of the Charlotte Branch, Falls Branch, direct road of the Central and of the West Shore, pass over this crossing, which is in a thickly-populated portion of the city, and is much used by pedestrians and others. Four other streets center at that point. The defendant employed one flagman at this crossing from 6 at night until 7 in the morning, and one from 7 in the morning until 6 at night. This it had done for some time previous to, and they were so employed at the time of, the accident. At 10 minutes to 6 on the morning of the accident, Thatcher, one of those flagmen, was seen on duty at the crossing. There was a large electric light, 20 feet from the ground, south of the Central tracks, and at the westerly curb of Brown street; and this light was burning at the time of the accident. At that time also a number of box cars were standing on the Rochester & Pittsburg tracks, just west of this crossing. Plaintiff's intestate had for many years lived near this crossing, and was perfectly familiar with it. On the morning of the accident, he left home about 6 o'clock, and went over this crossing to a saloon 150 feet north of the tracks. He remained until 6:33 or 6:34 o'clock, when he came out, and went towards the track. At that time, a freight train of 40 or 50 cars on track No. 3 was approaching the crossing, moving to the west. While this freight train was passing over the crossing, a man with a lantern was there, acting as flagman. He stood at the southerly side of defendant's tracks; and, immediately after the freight passed, swung his lantern, indicating that the tracks were clear, and then started towards the flagman's shanty, on the north side of the tracks. He gave no sign that another train was coming. Plaintiff's intestate started across the tracks just after the freight train had passed, and, as he reached track No. 1, was struck by the engine of a fast express train from the west, running at the rate of 40 miles an hour. Waldele was thrown into the air, and his body struck track No. 3 or 4, 20 feet east of the crossing. The wounds upon his body were on the right side. He was thrown to the east and north, indicating that, when struck, he had just reached the north rail of track No. 1. At the time of the accident, the regular flagman, who had been on duty at the crossing a short time before, had gone to a saloon, about 200 feet away. Just after the accident, he was seen on Brown street, coming from the direction of the saloon towards the tracks.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

John A. Barhite, for appellant.
Edward Harris, for respondent.

GREEN, J. The first question presented is whether the evidence of defendant's negligence was sufficient to require the submission of that question to the jury. It was proved, and not denied, that defendant's train which struck plaintiff's intestate was running at the rate of 40 miles an hour over Brown street crossing, which is in a thickly-populated portion of the city of Rochester. Defendant's employé, whose duty it was to protect from danger those who crossed at that point, had abandoned his post, either leaving a substitute, or making it possible, by his neglect, for an unauthorized person to assume his position and his duties, and, by his signals and negligent and careless conduct, give false assurance of safety to those who were obliged to use this dangerous crossing. The courts in this and other states have repeatedly declared that it is a question of fact for the jury whether the rate of speed of railroad trains in crowded centers of business and population, and through villages and cities

more or less densely populated, is excessive or dangerous. It is unnecessary to call attention to the familiar cases upon that subject. They all reach a like result, and have firmly established the rule which must govern courts in the disposition of that question. The evidence of the absence of the regular flagman at that crossing, at the time of the accident, tended to show negligence of defendant, and should have been submitted to the jury upon that question. Where a flagman has been uniformly stationed by a railroad corporation at a street crossing, the negligence of the flagman to give warning, and to properly discharge his duty, or in absenting himself from his post, is imputable to the corporation. Dolan v. President, etc., 71 N. Y. 285; Wilbur v. Railroad Co. (Sup.) 32 N. Y. Supp. 479. There was evidence tending to show negligence of defendant, and the learned trial justice erred in deciding, as matter of law, that defendant was not negligent. That question should have been submitted to the jury.

The question of the contributory negligence of plaintiff's intestate should also have been submitted to the jury. Plaintiff's intestate was familiar with the crossing, and had been for several years. He knew its dangers; knew that defendant considered it so dangerous that a flagman was stationed night and day upon that crossing, to give warning of approaching trains, and to assure safe passage to pedestrians. Waldele had walked over this crossing many times when the flagman was at his post of duty, and, while he must have known and appreciated the dangers of the situation, he must also have known and appreciated the safeguards for himself and others which the defendant had provided. Familiar, as he was, with all this, crossing there in safety, as he had, for so many years, he must have known that this defendant, for its protection and that of the public, had stationed at this crossing a flagman, whose sole duty it was to stand upon those tracks, and discover approaching trains, and give warning of their proximity to that crossing. It appears that Waldele came to track 3 about the time the freight came upon the crossing on that track. The witness Roth testified that he crossed just before the freight, and that the flagman, with his lantern, was then on the crossing, flagging the freight train. Mrs. Wyrsing, another witness, testified that she was at the south of the tracks, and that she first saw the freight train when the flagman made the motion to stop. It appears conclusively that when the freight was approaching, and while making the crossing, this person with the lantern was there acting as flagman. Waldele was then at the track on which the freight was passing. Immediately after the freight passed, the acting flagman swung his lantern, indicating that the tracks were clear, and started towards the flagman's shanty, across the tracks, to the north. He gave no sign that another train was approaching. Waldele starts to cross; passes over track 3, and onto track 2; and at this point, it is claimed by defendant, he could have seen the fast express coming from the west on track 1. But if the man who swung the lantern, and who had an unobstructed view to the west, did not see the approaching train, as he apparently did not, why should Waldele see it? If the Wyrsings (who had been stopped

by the flagman for the freight to pass, and who then, relying on the signal of the flagman, started to cross, and were only precluded from so doing by the express train coming upon the crossing before they could reach the track) did not see the train, why should Waldele? It does not follow as matter of law that, because he might have seen the coming train, he was guilty of contributory negligence. He had awaited the passage of one train. An assurance of safety and invitation to cross had been given by the acting flagman, who had started for the flagman's shanty, indicating there was no further danger to be apprehended. While Waldele, under these circumstances, was bound to use his eyes, he was not bound to use them in a particular manner, or at a particular instant of time. Oldenburg v. Railroad Co., 124 N. Y. 419, 26 N. E. 1021. The evidence shows that even if Waldele had looked westward, immediately after crossing track 3, he would have had only three seconds if passing directly, and less than six if crossing diagonally, over the tracks, in which to determine his action in escaping the impending danger. He came thus far upon the crossing after invitation by the flagman. The electric light on the south side of the track shone directly in his eyes. It was still dusk. He had reached track 2. If he then first saw the headlight of the passenger train coming towards him at the rate of 40 miles an hour, who shall say that, under the conditions existing at that second of time, he may not have judged that the express train was on track 2, and that, in passing to track 1, he was passing to safety, and not to death? The law does not hold a person to the same degree of prudence in times of danger as where deliberation is possible. When a defendant, by its negligent act, causes the circumstances of peril and creates the emergency, it is not released from responsibility because the plaintiff did not exercise the soundest discretion in his efforts to obviate the consequences of its fault. When danger is imminent, the law does not demand that accuracy of judgment required under other circumstances. Roll v. Railway Co., 15 Hun, 496, affirmed 80 N. Y. 647. Waldele had a right to rely upon the presence of a flagman to warn him of danger, and the swinging of the lantern and starting towards the shanty were an assurance of safety upon which he had a right to rely. This case is analagous to that of McNamara v. Railroad Co., 136 N. Y. 650, 32 N. E. 765, where it was held that the raising of gates at a railroad crossing was a substantial assurance of safety to one waiting to cross, just as significant as if the gateman had beckoned to him or invited him to come on, and that any prudent man would not be influenced by it is against all human experience. The defendant's counsel says that everybody who has anything to do with a railroad knows that the swinging of the lantern crosswise of the tracks is a signal for a train to stop. No one so construed that signal except the counsel, not even the railroad men. No train stopped in obedience to it. It was not so construed by the Wyrsings, who, construing it to be a signal of safety, started to cross the tracks, and had approached so near to track 1 that their horse's head was within a foot or two of the engine and cars of the express train as it dashed over the crossing.

Defendant insists that as the regular flagman was absent, and as it was not shown that the acting flagman was in defendant's employ, it is not liable for his negligence, and that plaintiff's intestate is guilty of contributory negligence in relying upon the apparent flagman. The company had, for some time before the accident, employed and kept a flagman at that crossing, night and day. The deceased knew this. The regular flagman had deserted his post for a time. He either procured this man to take his place during his temporary absence, or, by leaving the crossing, made it possible for another to act in his place, and give false assurance of safety. So far as the question of Waldele's contributory negligence is concerned, it is of no moment under what arrangement the flagman was there. The fact remains that he was there acting as flagman, and Waldele had a right to assume, from the former practice and custom of defendant, that this flagman was there under employment or authority from the company. If he was not, he was there through the negligence of the regular flagman in absenting himself from his post, and that negligence is imputable to this defendant.

We are of the opinion, therefore, that the evidence did not conclusively establish negligence on the part of deceased. There was evidence from which a jury might have found as matter of fact, or at least might fairly have drawn the inference, that the deceased, under all the circumstances of the case, exercised that degree of care and caution which prudent persons of ordinary intelligence usually exercise under like conditions and circumstances. We can see that the facts bearing upon the solution of this question were such that different minds might well disagree upon the construction to be given intestate's acts. It is especially the province of a jury to solve questions involved in such doubt or uncertainty. It was error, therefore, to refuse to submit this question to the jury.

A further question raised by exception to the refusal of the court to receive certain evidence should be considered.

The plaintiff offered in evidence an ordinance of the city of Rochester, providing that no railroad shall run its cars east of Brown street at a greater speed than eight miles per hour. This was objected to by defendant's counsel, upon the ground that it does not cover the street in question. The objection was sustained, and the plaintiff excepted. We are of the opinion that the learned justice erred in excluding this evidence. The ordinance must be given a reasonable construction, and to ascertain its meaning and the intention of its framers, as deduced from its language, the court may look at the circumstances under which it was passed. The evident intention of the city was to stop the rapid running of trains over crowded streets at grade. If the city intended that it should apply only to the territory east of the easterly line of Brown street, then it was its intention to leave that crossing without protection from fast-running trains. Brown street is in a populous portion of the city, and in frequent use by the public. It is unreasonable to suppose the city intended to relieve railroad corporations from restriction in the speed of their trains just at a point where it was most necessary. It would be both absurd and unreasonable to impute

such an intent, if the language used will bear a different construction. Obviously, the language of this ordinance is broad enough to cover the entire width of Brown street. It was clearly intended that Brown street, and not its eastern line, should form the limit. The train was running at the rate of 40 miles an hour when it reached Brown street. By necessity, the ordinance was violated, for by no human agency could the speed of the train have been reduced to 8 miles an hour while passing over this crossing. The ordinance was competent upon the question of defendant's negligence, and should have been admitted.

The plaintiff also excepted to the rejection of the testimony tending to show the speed of the express train. This evidence should have been admitted. The witnesses were persons of ordinary experience, and, so far as appears, were capable of imparting to the jury a fair idea of the speed of the train. This is not a question for experts alone. A person of ordinary experience can judge the movement of bodies along the streets or along the tracks of a railroad; and the evidence of witnesses, with such experience, as to the speed of a train when it passed them, or when they saw it at a given place or time, is competent and material. Salter v. Railroad Co., 59 N. Y. 631; Northrup v. Railway Co., 37 Hun, 299; Scully v. Railroad Co., 80 Hun, 197, 30 N. Y. Supp. 61.

We are of the opinion that there was evidence sufficient to require a submission of the case to the jury, and that error was committed in excluding evidence offered on behalf of plaintiff. It therefore follows that a new trial must be ordered, with costs to abide the event.

Order denying motion for new trial reversed, and motion for new trial granted, with costs to abide the event of action. All concur.