THEODORE DIECKMANN, as Administrator of the Estate
of FREDERICK J. DIECKMANN, Deceased, Appellant,
v. THE CHICAGO & NORTHWESTERN RAILWAY COM-
PANY, Appellee.

**Railroads:** PASSENGERS: WHEN RELATION ARISES: NEGLIGENCE: BURDEN
OF PROOF. One going to a railway station within a reasonable
time prior to the time set for the departure of the train, with a
*bona fide* intention of taking passage thereon, and either by pur-
chasing a ticket or in some other manner indicating such inten-
tion to the carrier, is to be treated as a passenger from that
time, and is entitled to an exercise of that degree of care for
his safety by the carrier which the law attaches to that relation;
and in case of injury the burden is upon the carrier to negative
the inference or presumption of negligence on its part.

**Same:** NEGLIGENCE: RATE OF SPEED. While a high rate of speed
in an open country is not as a matter of law negligence, it may
constitute negligence when a train is crossing the public street of
a city or is on station grounds where passengers may rightfully go.

**Same.** Where a railway company requires its passengers to cross
several tracks to another platform in order to board certain trains,
and the tracks approaching the platform are perfectly straight
for a long distance, the company is bound to know that the head-
light of an engine at night will not accurately inform the ordinary
observer of the distance of the approaching train from the depot;
and under such circumstances the jury should be permitted to pass
upon the question of a passenger's exercise of care in approaching
the platform.

**Same:** EXERCISE OF CARE: WHEN FACT QUESTION. A passenger is
entitled to an exercise of care for his safety from the time he
enters the station to take passage, and may assume that in going
to a train he will be protected from danger by the carrier's agent;
and in this case the questions of whether the agent exercised
proper care, after he had announced the approaching train, in
directing the deceased across the tracks of defendant to a plat-
form for the purpose of boarding the same, and whether the
engineer in charge of the train was negligent in its operation
were for the jury to determine.

**Same.** Where a railway company requires passengers to cross several tracks to another platform in order to board its trains, it is bound to provide a reasonably safe way for crossing and to exercise the highest degree of care for the protection of its passengers while doing so; and failure to announce the arrival of a train in time to make the crossing, or to properly light the crossing, or to guide passengers over the tracks, if due care requires such precaution, or the performance of such service so as to endanger a passenger is negligence for which the company is liable, unless relieved by failure of the passenger to exercise reasonable care for his own safety; and in the instant case it is held that the question of defendant's negligence in the discharge of such duties was for the jury.

**Same:** CONTRIBUTORY NEGLIGENCE: FACT QUESTION.  Contributory negligence is peculiarly a question of fact and should not be determined as a matter of law, unless the circumstances are so clear that fair minds can not differ in their conclusions therefrom; so that where the deceased, with other passengers, in response to the invitation of the railway company's agent attempted to cross the tracks to a platform for the purpose of boarding a train, the invitation was an implied assurance, upon which the deceased could rely, that he could cross the track safely, and he was not negligent in so doing unless his danger from the approaching train was so apparent that as an ordinarily prudent person he should have known the peril of attempting to cross.  Under the circumstances of the instant case the question of decedent's contributory negligence was for the jury.

**Same.** While the right of deceased to assume that the agent had announced the arrival of the train in time to cross the tracks to the platform in safety, and that safe access to the platform had been provided, did not relieve him from exercising due care for his own safety; still, these matters were material in determining whether he exercised due care in crossing the tracks.

**Same.** The invitation to deceased to cross the platform excused him from the ordinary duty to stop, look and listen for the approaching train; since he was entitled to rely on the invitation as an assurance of safety, and to assume that the speed of the approaching train would be regulated with due regard to his safety.

**Same.** One is not under all circumstances negligent in crossing a railway track with knowledge of an approaching train; as that question depends upon his relative distance and that of the train from the crossing, and all the circumstances of the particular case. In the instant case decedent was not as a matter of law negligent in so doing.

*Appeal from Linn District Court.*—Hon. B. H. Miller, Judge.

Saturday, June 5, 1909.·

Rehearing Denied Tuesday, December 21, 1909.

Action to recover damages for the death of Frederick J. Dieckmann. There was a directed verdict and judgment for defendant, and plaintiff appeals.—*Reversed.*

*Charles A. Clark & Son* and *Wm. G. Clark,* for appellant.

*James C. Davis, Clark & McLaughlin,* and *Grimm, Trewin & Moffit,* for appellee.

Weaver, J.—The following facts are undisputed: The defendant operates a double track railway, passing east and west through the town of De Witt, Iowa. The ticket office, waiting room, and main platform of the station are north of the tracks. Trains move eastward on the north track and westward on the south track, and westbound passengers are required to pass from the main platform over a planked way across both tracks to a platform on the south side in order to board their trains. At about eleven o'clock of the night of March 31, 1902, Frederick J. Dieckmann, a traveling saleman, went to the station to take the westbound train, which was due there about twenty minutes later. He purchased a ticket from De Witt to Cedar Rapids, and when the approach of the train was announced, or very soon thereafter, he picked up the grips which he was carrying, and started in the direction of the south platform. At or about the same time the station agent, taking a lantern, went in the same direction, and both he and Dieckmann were struck by the train, the

former being instantly killed, and the latter mortally injured, dying the next day.

Concerning the details with which this general outline of conceded facts is to be filled, there is some dispute and uncertainty. There is, however, evidence which tends to show that it was the custom or practice of the agent, on the approach of westbound trains, to call out, "Train west! All passengers cross over to the south side." At night he carried a lantern, and, after announcing the train, crossed over to the south platform. In so doing he was in the habit of showing the planked way or crossing to the passengers about to depart, and assisting them over, if assistance appeared to be needed. On the night in question he was heard to make the usual announcement; then, taking his lantern and some mail in his hand, started from the office in the direction of the south platform, followed by the deceased. The engineer in charge of the locomotive testifies that the train was moving at probably forty miles per hour, and was one minute ahead of schedule time as it entered the De Witt yards and sixteen miles per hour at the east end of the platform, which speed he thinks had been reduced to eight miles when the collision occurred. The headlight would not distinctly reveal to the engineer the form of a man at the distance of one hundred feet, but in his judgment it would do so at fifty feet. For an instant, as he approached, his eye was diverted to the air gauge of the engine, and, as he looked forward again when very near the crossing, he distinctly saw two men apparently running across the track to the south, one being slightly ahead of the other, the one in the rear carrying a lantern. Almost at the same instant, and before any effective measure could be taken to stop the train, both men were struck, with the results already mentioned. A witness for defendant, who claims to have seen the collision, states that the agent and himself crossed the tracks in safety to the south platform, and on turning saw Dieck-

mann coming carrying three grips. On reaching the north track witness says Dieckmann fell, and, arising and hurrying forward he fell again on the south track, when the agent went back and laid hold of him, and was trying to drag him from the track when the engine came upon them. This witness and the engineer are the only persons testifying as eyewitnesses of the accident, and it is evident that one of them is mistaken as to some of its material circumstances. In corroboration of the engineer's statement it may also be said that the body of the agent was found under the north wheel of the engine or on the north rail; while the body of deceased lay on the platform on the south side of the south rail. Which story is the more worthy of credit is not a question for the court to consider; nor are we prepared to say that if the latter version is correct, it is decisive of the case.

Plaintiff's claim for damages is based upon the theory that, when Dieckmann went to the station and purchased a ticket for passage on a train nearly due, the relation of carrier and passenger then became effective, and that the railway company thereupon became bound to exercise the highest degree of care for his safety, and to provide him a safe way to the train and opportunity to reach the platform without injury, as well as to furnish proper escort and direction to the passenger if reasonably necessary to insure such safety. In these respects it is alleged the company was negligent. The defendant denies negligence on its part, and insists that the intestate was clearly guilty of contributory negligence. Upon a former submission the ruling of the trial court directing a verdict for defendant was sustained, but, a petition for rehearing having been granted, the case has been reargued by counsel on both sides with great thoroughness. The material questions may be considered in the following order:

I. We will first inquire as to the relation existing between the appellant and the deceased at the time of the

accident and the measure of the duty, if any, which the

1. RAILROADS:
passengers:
when relation
arises: negli-
gence: burden
of proof.

former owed to the latter. Mr. Hutchinson states the general rule to be that a person who goes to the station of a railway company within reasonable time prior to the hour set for the departure of a train, with the *bona fide* intention of taking passage thereon, and there, either by purchasing a ticket, or in some other manner indicates such intention to the carrier, he is considered to be a passenger, and entitled to all rights and privileges which the law attaches to that relation. 2 Hutchinson on Carriers (3d Ed.) 1006. Such is also the rule of the decisions and text-books generally. 1 Fetter on Carriers of Passengers, section 55; *Chicago, etc., R. R. Co. v. Walker*, 217 Ill. 605 (75 N. E. 520); *Warren v. R. R. Co.*, 8 Allen (Mass.) 227 (85 Am. Dec. 700); *Knight v. R. R. Co.*, 56 Me. 234 (96 Am. Dec. 449); *Gaynor v. R. R. Co.*, 100 Mass. 208 (97 Am. Dec. 96); *Railway Co. v. Ryan*, 165 Ill. 88 (46 N. E. 208); *Warner v. R. R. Co.*, 168 U. S. 339 (18 Sup. Ct. 68, 42 L. Ed. 491); *Norfolk & Western Ry. Co. v. Galliher*, 89 Va. 639 (16 S. E. 935); *Baltimore & O. Ry. Co. v. State*, 63 Md. 135; Id., 81 Md. 371 (32 Atl. 201); *Railway Co. v. Perry*, 58 Ga. 461; *Railway Co. v. Franklin* (Tex. Civ. App.) 44 S. W. 701; *Rogers v. Steamboat Co.*, 86 Me. 261 (29 Atl. 1069, 25 L. R. A. 491); *Atchison, etc., R. Co. v. Holloway*, 71 Kan. 1 (80 Pac. 31, 114 Am. St. Rep. 462); *Jordan v. R. R. Co.*, 165 Mass. 346 (43 N. E. 111, 32 L. R. A. 101, 52 Am. St. Rep. 522). This court is also committed to the same doctrine. *Allender v. R. R. Co.*, 37 Iowa, 270; *Ramm v. R. R. Co.*, 94 Iowa, 296. We must therefore consider the deceased to have been a passenger at the time he attempted to cross the tracks, and the degree of care which the company was bound to exercise for his safety must be measured accordingly. It is also to be observed that, when it was shown that deceased sustained the relation of pas-

senger, and that he was killed by a train under the management and control of the defendant as carrier, the burden was cast upon it to negative the inference or presumption of negligence on its part. 5 Hutchinson on Carriers (3d Ed.), section 1413.

II. It is claimed by appellant that the railway company negligently failed to control or reduce the speed of the train in approaching the station. Upon the former hearing to this appeal the court in its opinion held that the case would have been one for the jury on the question of excessive speed but for the fact that the contributory negligence of the deceased exonerated the company from liability. Counsel for appellee insist that no rate of speed in the movement of a railway train can be negligence *per se,* and that the case before us presents no circumstances from which a finding of want of reasonable care by the company in this respect can be sustained. We have quite frequently said that no conceivable rate of speed by a railway train in the open country will be held negligent as a matter of law, but we have nowhere held that the rate of speed upon or across city streets or public crossings, or on station grounds where passengers may rightfully go, may not under some circumstances be found negligent as a matter of fact. *Kinyon v. R. R. Co.,* 118 Iowa, 349; *Artz v. R. R. Co.,* 44 Iowa, 285.

*2. Same: negligence: rate of speed.*

In the case before us the company required its passengers desiring to board the westbound train to leave its waiting rooms and cross both tracks to the south platform. The approach of these tracks from the east was from a straight line of several miles. At night, in the very nature of things, the view of a locomotive headlight coming straight on through the darkness would give the ordinary observer a very inadequate idea of its distance, or of the speed of its approach. Of all these things the company must be held to have had knowl-

*3. Same.*

edge, and we think it a fair question for the jury to say whether, in view of the known danger to which the company's method of business exposed its passengers in this respect, and all the circumstances attending the accident, the train at that moment was or was not being operated at a reasonable speed. While the engineer estimates that he entered the yards at forty miles per hour, and had reduced the speed to eight miles at the place of the accident, and there is no reason to question his good faith, there are admitted circumstances from which the jury could reasonably conclude that his estimate of speed is too low. We are therefore inclined to reaffirm our former conclusion on this branch of the case, and say that the jury was entitled to consider whether due care in approaching the platform was exercised.

Moreover, under the rule above cited, which casts upon the railway company the duty of negativing the inference of negligence arising from the injury of plaintiff by the movement of its train, it was very clearly

4. SAME: exercise of care: when fact question.

for the jury to say whether the evidence offered in defense was sufficient to overcome the *prima facie* case thus made. That rule of care due the passenger applies from the moment he enters the station for the purpose of embarking upon an approaching train, and he has the right to expect that in going to the train and entering the cars at the place prepared for that purpose his safety will be vigilantly guarded by the carrier's agents.

Directly in point upon this subject is the language of the Supreme Court of Maryland: "Carriers of passengers have in their charge the lives and safety of those they undertake to transport, and are subjected to a responsibility proportioned to the gravity of the trust reposed in them. They are bound to use the utmost degree of care, skill and diligence in everything that concerns the safety of passengers, nor are their duties limited to the mere transportation of them. They are bound to provide safe and convenient

modes of access to their trains, and of departure from them." *Railway Co. v. Anderson,* 72 Md. 519 (20 Atl. 2, 8 L. R. A. 673, 20 Am. St. Rep. 483). In the same case it is held that, where the relation of carrier and passenger exists, and the latter is injured by the movement of the carrier's train, these facts being shown, the *onus* is upon the carrier to show that it was guilty of no negligence with respect to the accident. And this, says the court, can only be done by proving the facts and circumstances explaining the cause of the accident, and showing it to be such as could not have been guarded against by the utmost degree of diligence; or, in other words, quoting the language of Chief Justice Shaw, "the most exact care and diligence, not only in the management and care of the train and cars, but also in the construction and care of the track, and in all subsidiary arrangements necessary to the safety of passengers." That the station agent in the present instance invited the deceased to cross the track, and thereby led him into imminent peril, is shown beyond all question, and that he, or the engineer in charge of the train, or both, were negligent is so clear that to say as a matter of law they were both exercising due care for the passengers' safety would be a palpable absurdity.

III. Another ground of alleged negligence, as stated in the petition, is that the defendant by its agent carelessly and negligently notified and directed the deceased to cross the tracks, and negligently undertook to, and 5. SAME. did, escort and direct or lead him upon the crossing in front of the train by which he was run down. Here, too, we think the testimony makes a case on which the plaintiff was entitled to go to the jury. The arrangement of the station, tracks, and platform to which we have referred, and the necessity thus created for westbound passengers to cross said tracks in front of the coming train, made it incumbent on the defendant company to provide at least a reasonably safe way for such crossing to be made,

and to exercise the highest degree of care to protect them from injury in making the passage. If due care in this respect required a timely announcement of the approach of the train, or the use of a light by lantern or lamp to illuminate the path, or the services of a guide or escort to conduct the passengers to the proper platform (and that was for the jury to say), the failure to provide these safeguards would be negligence; and if, having provided them, the announcement is delayed so long, or the other service is so carelessly or inefficiently performed, that a passenger is exposed or led into danger which proper care on the part of the company's agents would have avoided, it is properly held liable for the consequences, unless relieved therefrom by a failure to show reasonable care on part of the passenger. This rule has not infrequently been applied to cases very similar in their facts to those now under consideration. *Railroad Co. v. Morgan,* 26 Tex. Civ. App. 378 (64 S. W. 688); Shearman and Redfield on Negligence, section 525; *Warner v. R. R. Co.,* 168 U. S. 346 (18 Sup. Ct. 68, 42 L. Ed. 491); *Warren v. R. R. Co.,* 8 Allen (Mass.) 227 (85 Am. Dec. 700); *Railroad Co. v. Ryan,* 165 Ill. 88 (46 N. E. 208); *Beecher v. R. R. Co.,* 161 N. Y. 225 (55 N. E. 899); *Wheelock v. R. R. Co.,* 105 Mass. 207; *Chaffee v. R. R. Co.,* 104 Mass. 108.

IV. If we are correct in the foregoing conclusion, and the question of due care on part of the company was one of fact for the jury, the ruling of the trial court in directing a verdict for defendant can not be upheld, unless we are able to say as a matter of law that the deceased was guilty of contributory negligence. On the affirmative of this proposition the appellee lays great stress in argument; but, after reexamining the record with much care, we are strongly of the opinion that this, too, was a question for the jury. The fact that deceased undertook to cross a track on which he knew a train was approaching was not necessarily negli-

6. SAME: contributory negligence: fact question.

gent in law or in fact. The construction and arrangement of the station and platform made the crossing necessary. There was no other way provided for boarding the train. The defendant must be held to have invited the deceased to go to the platform, and by such invitation have given him implied assurance that the train was at such distance, and moving at such rate, that he could cross the track with safety. In accepting that invitation and acting upon it he can not be charged with culpable negligence, unless the danger of collision was so manifestly imminent that he knew, or as an ordinarily prudent person under all the circumstances he should have known, of the peril to which he was thereby exposed. We are not ready to say that a passenger waiting at a station in the nighttime is negligent as a matter of law because he relies upon the agent, and acts upon his announcement of the approach of a train, and follows or accompanies him across the track to the appropriate platform. The circumstances may have been such that he ought to have disregarded the invitation and refused to attempt the crossing, but certainly that conclusion is not so clear or so imperative as to compel the assent of all reasonable minds. Contributory negligence is peculiarly a question of fact, and the court should not attempt to dispose of it peremptorily, save where the circumstances are clear and undisputed, and are of such character that fair and unprejudiced minds can not arrive at different conclusions therefrom. The deceased was entitled to the highest degree of care by the defendant for his protection. He was entitled to assume that a reasonably safe way had been provided for his access to the platform. He was justified in assuming that the announcement was made in due time, so that, acting with proper dispatch, he could pass in safety from the waiting room to the platform.

True, these things did not absolve him from the duty to exercise reasonable care for his own safety, but they are material and necessary elements for consideration in

determining what were the requirements of reasonable care
on his part under all the circumstances, and
this is a question of fact, and not of
law, to be answered only by duly weighing all the testi-
mony bearing thereon. *Warner v. R. R. Co.,* 168 U. S.
346 (18 Sup. Ct. 68, 42 L. Ed. 491); *Brassell v. R. R.
Co.,* 84 N. Y. 244; *Gaynor v. R. R. Co.,* 100 Mass. 212
97 Am. Dec. 96); *Beecher v. R. R. Co.,* 161 N. Y. 226
(55 N. E. 899); *Atchison, etc., R. Co. v. Holloway,* 71
Kan. 1, (80 Pac. 31, 114 Am. St. Rep. 462).

7. SAME.

In *Mayo v. R. R. Co.,* 104 Mass. 141, the court speak-
ing with reference to alleged contributory negligence of a
passenger while crossing a track at a railway station, says:
"Although the burden of proof still remains upon the plain-
tiff in these cases to show the exercise of such degree of
care as was appropriate to the place and occasion, yet the
court will not attempt to decide the question of due care
upon the preponderance of evidence. The surrounding cir-
cumstances, and the whole conduct of plaintiff in reference
thereto, will ordinarily afford ground for such a variety of
inferences as to make the verdict of a jury the only proper
means to determine the essential fact. However indicative
of carelessness the circumstances may seem to the court,
if there be any evidence on which it is competent for the
jury to find that reasonable care was in fact exercised, it
is proper to submit it to them." The same court, in
*Gaynor v. R. R. Co.,* 100 Mass. 212 (97 Am. Dec. 96),
discussing the same question of contributory negligence in
crossing a railway track, makes use of the following ex-
pression: "When the circumstances under which the
plaintiff acts are complicated, and the general knowledge
and experience of men do not at once condemn his conduct
as careless, it is plainly to be submitted to the jury. What
is ordinary care in such cases, even though the facts are
undisputed, is peculiarly a question of fact, to be deter-
mined by the jury under proper instructions. It is the

judgment and experience of the jury, and not of the judge, which is to be appealed to." The Illinois court has said: "It is always a question for the jury to determine from the evidence whether the person injured has exercised proper care and caution in crossing a railroad track, and not a question of law." *Railroad Co. v. Frana,* 112 Ill. 405; *Railroad Co. v. Hutchison,* 120 Ill. 587, (11 N. E. 855).

Since this case was originally submitted several decisions quite in point have been announced in other jurisdictions, and to some of these we call attention. *Chunn v. Railroad Company* (decided by the Supreme Court of the United States November 8, 1907), 207 U. S. 302 (28 Sup. Ct. 63, 52 L. Ed. 219), presents a case where the plaintiff went at night to the station to take passage on a car soon to arrive. The road was double-tracked, and a platform for the use of the passengers had been provided along the outside. The narrow space between the tracks was also planked, and passengers sometimes stood there when waiting to board the cars. Plaintiff took her stand upon this narrow place. From this position she could, if she looked, see an approaching car from either direction for a distance of at least a quarter of a mile. Standing there, as the train she was expecting approached, she was struck and injured by another car coming in from the opposite direction on the other track. Having brought action to recover-damages, the trial court directed a verdict for the company, on the theory that plaintiff was guilty of contributory negligence as a matter of law. This judgment was affirmed by the Court of Appeals of the District of Columbia, which decision was reversed by the Supreme Court. After first finding that the plaintiff was not a trespasser, the court proceeds to say that: "She was not as a matter of law guilty of negligence in failing to appreciate accurately the boundaries of the narrow zone of safety which the defendant's conduct had left her."

More closely parallel to the case at bar is *Karr v. Traction Company,* decided by the Wisconsin court, and reported in 132 Wis. 662 (113 N. W. 62, 13 L. R. A. (N. S.) 283, 122 Am. St. Rep. 1017). There the defendant operated a double-track electric railway. At one of its stations or stopping places, where no agent or attendant was in charge, it erected between its tracks a device for giving the stop signal by passengers awaiting at night. It was so arranged that, when a lever attached to the device was lifted, a light would be displayed from the top of a pole, and on releasing the lever the light would be extinguished. Attached to the device was a printed card instructing the passengers to hold up the handle until the car was in sight. As the entrance to the cars was from the outside of the track, the passenger, after giving the signal, was of necessity obliged to pass back again across the track in front of the approaching car, or wait until it stopped, and then walk around it to the opposite side. On a dark night the plaintiff, desiring to take a car, went to the signal post, and, when he saw or heard the car approaching, displayed the signal, and on hearing the whistle sounded by the motorman, undertook to cross the track, and was run down. When the light was displayed the car was only about one hundred and ten feet distant, and running very rapidly, and plaintiff had taken but two or three steps from the signal post when he was struck. To the contention of the defendant that in crossing the track in front of the rapidly moving car plaintiff was guilty of contributory negligence as a matter of law, the court, after reciting the conditions under which the accident occurred, says:

One who had by daylight observation become familiar with these conditions and these measurements, and the place of stopping the northbound car, might, and probably would, remain between the tracks after he had held up the signal light and until the train arrived, but a person not possessing this familiarity, and arriving on a dark

night where distances can not be so accurately estimated, might ordinarily and usually, in view of the position of the signal light on the center pole, the printed and inadequate instructions thereon, and the necessity of boarding the car from the outside, cross over from that side immediately upon letting go ·of the signal light. This was for the jury to decide. . . . The reason for the distinction between the case of a passenger crossing a track under such circumstances and the ordinary pedestrian bearing no such relation to the railway company appears to rest upon the possibility or probability that a reasonably prudent man, in the exercise of ordinary care, might well believe, in the face of such implied invitation to cross, the movements of passing trains would be so regulated or adjusted as to permit his crossing in safety. The jury was authorized to infer from the evidence that the plaintiff as a reasonably prudent man understood that he was obliged to cross the east track in order to board the car in question, and to cross at the time and in the manner in which he did cross, and that due care would be exercised by the defendant, for the safety of those so crossing by stopping south of or at the signal light. The jury had also the right to consider that the plaintiff was so near the inner rail, and in such a position in giving the signal, that an ordinarily prudent man, knowing that the car would stop for only a moment to permit him to embark, might have considered it the proper course for him to cross the track at the time and in the manner he did cross it in order to enter the car. ˙ It was essentially a question of fact, and not one of law, whether or not an ordinarily prudent man would, under the circumstances, have done as plaintiff did.

These words apply with increased force to the case before us. The deceased was a passenger and entitled to protection as such. He was not only impliedly, but expressly, invited to cross the track in front of the incoming train. It was the only method provided to enable him to take passage upon it. The place, except the small area illuminated by the agent's lantern, was enveloped in the darkness of night. The only visible sign of the approach-

ing train was the headlight of the engine coming "head on" through the darkness up a long stretch of straight track, a situation in which it was manifestly difficult, if not impossible, to judge accurately of its speed or distance. The agent to whom was intrusted the duty to guide him across the track, and on whom he as a passenger had a legal right to rely, directed him to take the south platform, and in following this direction the collision occurred. Nor is it to be overlooked that the train was a minute ahead of time, and this fact is not without material bearing upon the question whether deceased as a reasonably prudent person may not have believed he had ample time to make the crossing in safety. We can imagine no state of circumstances calling more loudly for the application of the principles stated by the Wisconsin court, *supra,* justifying the passenger, as a reasonably prudent man, in believing that in the face of such invitation to cross the track, the movements of trains thereon would be so regulated and adjusted as to permit his crossing in safety.

A discussion by the court in *Doyle v. Railroad Co.,* 145 Mass. 386 (14 N. E. 461), is also quite pertinent to the question here presented. The deceased was driving in the nighttime over a crossing of the defendant's tracks in the city of Boston. The crossing was guarded with gates, operated by a gateman, and was also protected by a gong, which sounded on the approach of a train. The gates being open, the deceased undertook to cross; but, before he reached the track on which the train was coming, the alarm was sounded, and the gateman, seeing him, called to him to stop, and, as was claimed, immediately called to him again to go on. The deceased evidently either heard the alarm, or saw the approach of the train, for he was seen to start suddenly, whip up his horses, and endeavor to make the passage, but failed, and was killed.

The opinion, delivered by Holmes, J., says of the question of contributory negligence:

> We can not say as a matter of law that deceased was guilty of gross negligence. The plaintiff's evidence tended to show that he had got halfway across before there was any warning, and before the gates were shut; that the first warning he received was when the gates were shut, and the gateman shouted 'Stop!' a shout which he may have heard only as an alarming sound; that then, practically all at once, the deceased whipped his horse, the gateman shouted to him to 'Come on!' and opened again the gate in front of him. We do not say that this seems to us the most probable view of the facts, but it is one which the jury might have taken on the evidence. Going on under the circumstances was a mistake, but we can not say it was gross negligence. Something must be allowed for the natural impulse which some people feel when suddenly startled and alarmed to leap forward, and more for the natural tendency to follow the gateman's directions.

We have ourselves, within the last few weeks, held it error for the court to direct a verdict for the defendant in a crossing accident case where the alleged negligence of the company and freedom from contributory negligence by the plaintiff were sustained by evidence far less persuasive than is presented by the record now before us. See *Calwell v. R. R. Co.,* 138 Iowa, 32.

The effect of an invitation, express or implied, by a gateman, station agent, conductor, or other employee to a passenger to cross a railway track, either for access to, or exit from, a train, has often been considered

8. SAME.

by the courts in relation to the question of contributory negligence. It has also frequently arisen in cases of injury to highway travelers; and, even in this class of cases, where the rule of care by the railway company is much less stringent than in the case of injury to passengers, it is universally held that such invitation excuses the person attempting the crossing from the ordinary

obligation to stop, look, and listen for approaching trains, and that he may ordinarily rely upon the invitation as an assurance of safety, and may assume that the movement of cars and trains over such crossing will be regulated with due regard to his safety.   See *Glushing v. Sharp,* 96 N. Y. 676; *Palmer v. R. R. Co.,* 112 N. Y. 241 (19 N. E. 678); *French v. R. R. Co.,* 116 Mass. 537; *Sweeny v. R. R. Co.,* 92 Mass. 368 (87 Am. Dec. 644); *Sonier v. R. R. Co.,* 141 Mass. 10 (6 N. E. 84); *Railroad Co. v. Stegemeier,* 118 Ind. 305 (20 N. E. 843, 10 Am. St. Rep. 136); *Railroad Co. v. Clough,* 134 Ill. 586 (25 N. E. 664, 29 N. E. 184); *Railroad Co. v. Schneider,* 45 Ohio St. 678 (17 N. E. 321); *Terry v. Jewett,* 78 N. Y. 338.

In the *Sweeny* case, *supra,* it was claimed that the company's agent gave the plaintiff a signal to cross the track, and the court says: "No express invitation need to have been shown.   It would have been only necessary for the plaintiff to prove that the agent did some act to indicate that there was no risk of accident in attempting to pass over the crossing."   In the *Glushing* case the question was upon an implied invitation offered by an open crossing gate, and the court uses this language: "The raising of the gate was a substantial assurance to him of safety, just as significant as if the gateman had beckoned to him, or invited him to come on, and that any prudent man would not be influenced by it is against all human experience."

In *Hartzig v. R. R. Co.,* 154 Pa. 364 (26 Atl. 310), the plaintiff was acting under the direction of a brakeman in making her exit from a train, and was injured.   The court there says: "In such circumstances she can not be charged with contributory negligence for doing what she was told to do by the brakeman.   She was still in the charge of the defendant company, and was therefore not a discharged passenger.   She was using the means for alighting which were provided for her, and with the assistance of their agent."   The same rule is affirmed in

*Filer v. R. R. Co.,* 59 N. Y. 351. In *Jewett v. Klein,* 27 N. J. Eq. 550, the plaintiff, a passenger, was injured in crossing the track to take his train, and the court there uses language peculiarly applicable to the present case. It says: "The company had provided no way of approach to the passenger train, except by crossing on a level the eastern track of the railroad, and in my opinion the passenger was fully justified in concluding that he would be safe from harm from a train on the track which he was thus obliged to cross in order to secure his passage. The company had, in effect, assured him that he would at that time be safe in going in the usual way from the station to the passenger train. Acting upon such assurance, the plaintiff did no more or less than ordinarily prudent and careful persons do almost every day under like circumstances, and may be expected and have the right to do."

We quote also from the Michigan court: "Where passengers are at the appointed place for embarking, with no fences or gates to keep them back, they must generally have the right, if they do so in good faith, to assume that no dangerous orders will be given, and that they may safely act on the direction of those whose legal duty it is to protect them from risk, and who are supposed to know what is safe. Some allowance must also be made for such conditions as stand in the way of full deliberation. It is applying too harsh a rule to hold that persons, who have apparently few moments to decide between the direction of the officers and losing their last chance of passage, should be held negligent in doing as they are invited to do, unless the danger is very obvious." *Clinton v. Root,* 58 Mich. 182 (24 N. W. 667, 55 Am. Rep. 671); *Pool v. R. R. Co.,* 56 Wis. 236 (14 N. W. 46).

Very closely resembling the case at bar is *Warren v. Railroad Company,* 8 Allen (Mass.) 237 (85 Am. Dec. 700). There the plaintiff was required to cross the track to reach his train. While awaiting its arrival at the sta-

tion, the agent announced, "The train is coming! We will cross over." Following this direction, plaintiff undertook to make the crossing, and was struck by a moving train, which he could have seen and avoided had he looked. Holding that he was not negligent as a matter of law, the court says: "Whether in this connection of things, in his anxiety to seasonably reach the train, which would stop but a moment, the plaintiff, at a station with which he was not familiar, would have been likely to be thrown off his guard by the direction to cross over, given without any caution or qualification, whether he might naturally, and without subjecting himself to the imputation of want of care, have considered himself in the charge of the defendant's agent, with an assurance that it was safe and proper to go directly to the cars, were questions for the jury, and not for the court."

It needs no argument to demonstrate the manifest application of these cases, and the law therein announced, to the case at bar. We further cite, without quotation, *Boesen v. R. R. Co.,* 79 Neb. 381 (112 N. W. 615); *Railroad Co. v. King,* 99 Fed. 251 (40 C. C. A. 432, 49 L. R. A. 102); *Warner v. Railroad,* 168 U. S. 339 (18 Sup. Ct. 68, 42 L. Ed. 491); *Betts v. Railroad,* 191 Pa. 580 (43 Atl. 362, 45 L. R. A. 261); *Graven v. McLeod,* 92 Fed. 851 (35 C. C. A. 47); *Railroad v. Lagerkrans,* 65 Neb. 566 (91 N. W. 358, 95 N. W. 2); *Railroad v. Goodin,* 62 N. J. Law, 394 (42 Atl. 333, 45 L. R. A. 671, 72 Am. St. Rep. 652).

The only possible escape from this conclusion is for this court to say, as a matter of law, that the danger in making the crossing was so obvious that, as a man of ordinary prudence, the deceased should have refused to follow the agent to the platform. But when we stop to consider what such a holding would involve, it is very clear that we would be thereby invading the province of the jury. In the first place, as the cases hold, over and over

again, the invitation was an assurance of safety held out
by the defendant. . It was given by the person whom the
defendant had placed in charge of its station for that pur-
pose. The deceased had a right to assume that the agent's
knowledge, experience, and judgment as to the safety of
the crossing was superior to his own. The jury could
rightfully have found that, had the train not been moving
at a negligently high rate of speed, deceased would have
reached the platform in safety. The court is not in posi-
tion to say that in the darkness of the night, and in his
natural haste and anxiety to make the train, deceased
ought to have discovered the excessive speed of the train
approaching, and refused to attempt the crossing. Indeed,
it is quite obvious that the agent himself, with all his ex-
perience, was deceived concerning the speed of the train,
and was thereby misled to his own death. It is admitted
that the train entered the station yard at the rate of at
least forty miles an hour, and was moving at the rate of
sixteen miles an hour when it reached the end of the plat-
form. But how was the deceased to be held to a discovery
of this negligence in time to have avoided injury? He had
the undoubted right to assume that the defendant company
having so arranged its station as to require him to cross
from the waiting room to the opposite side of the track
in front of a train known to be approaching, it would so
govern the movement of such train that the passenger
rightfully availing himself of this means of access to the
train upon which he was to be transported would not be
unreasonably exposed to danger. He had to act quickly.
If he would not lose his train, he could not stop to make
a careful examination of his surroundings, or to enter
upon deliberate calculation as to the degree of danger to
be apprehended in going ahead. *Waldele v. R. R. Co.,* 4
App. Div. 549 (38 N. Y. Supp. 1009).

Indeed, if under such circumstances, the court is to
hold the deceased guilty of contributory negligence as a

matter of law, it would be exceedingly difficult to imagine
a case in which that question may ever be
submitted to a jury.  It has never been held
by any court that a person crossing a railway track  with
knowledge of an approaching train is, under all circum-
stances, negligent as a matter of law.  That question de-
pends entirely upon the relative distance of the person and
the train from the crossing; and, if the train is so near,
and moving at such a rate of speed that the traveler as a
reasonably prudent person knows, or ought to know, that
he can not cross the track without exposing himself to a
collision, then his attempt to do so is negligent.  But if
the train is at such distance that a reasonably prudent
man may fairly believe that he can cross in safety, then
the act is not negligent, and the question whether he is
justified in so believing is, under all ordinary circum-
stances, for the jury.  If he is a traveler at a public cross-
ing, or a passenger waiting at the station to board the
train, and the darkness of the night prevents his seeing
the speed of the approaching train, he may rightfully as-
sume that it is not being operated at an excessive or reck-
less pace, and that the approach will be made with due
regard for his safety, and he is not negligent in govern-
ing his movements accordingly.  If to the darkness of the
night and to this reasonable presumption we add the pres-
ence of the railway company's agent pointing out the way,
and directing him to cross, it would, as one of the authori-
ties above cited says, be contrary to all human experience
if even the most prudent traveler be not influenced by it.

*9. SAME.*

In *Railway Co. v. Van Steinburg,* 17 Mich. 99, we
have a case where the plaintiff, the keeper of a hotel located
on the opposite side of the track from a station, after hear-
ing the whistle of an approaching train, left his place of
business to go to the station, and in attempting to make
the crossing ahead of the train was struck and injured.
The principal negligence charged against the railway com-

pany was in making the approach at an alleged reckless rate of speed. The case, as will be seen, was very much less favorable for the plaintiff than is presented by the case at bar. In an opinion by Chief Justice Cooley the question whether, under such circumstances, the plaintiff was chargeable with contributory negligence as a matter of law is considered with great fullness; and, after an elaborate review of the authorities, it is held to be a jury question. The discussion by the learned Chief Justice is worth careful examination by any court, when urged to dispose of questions of negligence and contributory negligence as matters of law, and we will prolong this opinion, already too extended, only to give his application of the law to the particular facts, which are in a great measure parallel with those we are now considering. He says:

It certainly can not be said, on any view of the evidence, that the plaintiff observed the highest degree of prudence in his conduct. He stepped on the track on which he knew the train was approaching, without turning to see how near it was, and the injury has resulted in consequence. Thus stated, the fact would appear to be gross negligence, if not utter recklessness; but there are other circumstances to be taken into consideration before judgment can be pronounced upon the character of the act. The plaintiff heard the whistle a half a mile off. He knew he had the time, which would be required for the train to pass over that distance, in which to cross over to the depot, a distance of less than one hundred feet. He also knew that all trains coming on this track stopped at the depot, and that they checked their speed and approached it slowly. He had also some reason to expect the ringing of the bell. But whether the bell was rung or not it may well be claimed he had abundant reason to believe there was ample time to cross the track before the train in the ordinary course could possibly arrive, even though he walked along leisurely as he must have done. He looked for the train, indeed, as he came out of his hotel, but he had less than the usual occasion for looking when he knew about how far off the train was, and that, relying upon the ordinary mode of management, as he

had a right to, he could not be in danger from it in passing over, and, if we are to believe his evidence, he was entirely correct in his calculations, and it was only because the train came up at a speed twice as great as he had any right to anticipate that he found himself in danger. He may claim, therefore, that he was not guilty of want of ordinary care and prudence because the ordinary condition of things, which was what he was to look for, would not have made his position dangerous.

The case of *McIntyre v. R. R. Co.*, 37 N. Y. 287, is also so directly in point, and the discussion of the subject of contributory negligence in following the direction of the carrier's agent is so applicable to the circumstances now under consideration, that at the risk of seeming tedious we now quote therefrom. The passenger, laden with a bandbox, bundle, basket, and flowerpot, and piloting her aged parent, also incumbered with baggage, undertook to pass from one car to another while the train was in motion, and the platforms slippery with sleet and ice, fell between the cars. She attempted to make the passage because the seats in the car were all filled, and the brakeman told her to go into the next car, where she would find room. In an opinion by Fullerton, J., it is said:

She had a right to a seat, and it was the duty of the defendant to provide her with one. If in discharging that duty they required her to perform an act which was perilous in itself, and in doing which she lost her life, the negligence, if any the act involved, should be imputed to the company alone. . . . I admit that passing from one car to another in a dark and stormy night, incumbered with baggage, and having charge of an aged person, was an act fraught with imminent peril, and, if done without sufficient reason, one involving great negligence. But, having been undertaken at the request of the company, it is to be regarded as their act, and attempted at their risk. Unless this view of the case is adopted, railroad companies may be guilty of the grossest wrongs without incurring liability.

The following precedents are worthy of note, not so
much because of similarily of facts involved with these
presented by the instant case, but for their discussion and
elucidation of the law of negligence and contributory negli-
gence in personal injury cases, and the limitation upon
the authority of the court to dispose of such questions as
matters of law. *Ernst v. R. R. Co.*, 35 N. Y. 9 (90
Am. Dec. 761); *Walker v. R. R. Co.*, 81 Minn. 404 (84
N. W. 222, 51 L. R. A. 632); *Benjamin v. R. R. Co.*,
160 Mass. 3 (35 N. E. 95, 39 Am. St. Rep. 446); *Rail-
road Co. v. Ogier*, 35 Pa. 72 (78 Am. Dec. 322); *Cor-
rell v. R. R. Co.*, 38 Iowa, 120; *Railroad Co. v. Ives*, 144
U. S. 428 (12 Sup. Ct. 679, 36 L. Ed. 485); *Railroad Co.
v. Prescott*, 59 Fed. 237 (8 C. C. A. 109, 23 L. R. A.
654); *Beisiegel v. R. R. Co.*, 34 N. Y. 633 (90 Am. Dec.
741); *Tilden v. R. R. Co.*, 27 R. I. 482 (63 Atl. 675);
*Railroad Co. v. Winters*, 175 Ill. 293 (51 N. E. 901);
*Bucher v. R. R. Co.*, 98 N. Y. 128; *Holden v. R. R. Co.*,
103 Minn. 98 (114 N. W. 365); *Railroad Co. v. White*,
88 Pa. 333; *Railroad Co. v. Shean*, 18 Colo. 368 (33 Pac.
108, 20 L. R. A. 729).

The trial court erred in refusing to submit the case to
the jury, and a new trial must be ordered.—*Reversed.*

SHERWIN, J. (dissenting).—Believing that the opin-
ion of the majority on the question of the contributory
negligence of the deceased is based on an erroneous con-
ception of the evidence, I can not assent thereto. As I
read the record, there is absolutely no support for the as-
sertion that the agent, Barker, was either leading, direct-
ing, or assisting the deceased across the tracks. The testi-
mony of the engineer is not, in my judgment, in conflict
with that of the witness Gabbert, who testified that he and
the agent crossed to the south platform alone, and that
after they had reached there he looked back and saw the
deceased fall on the north track, pick himself up, start
forward, and fall on the south track in front of the train,

at which time the agent left the south platform and went to his assistance. The engineer testified that he saw the two men on the track directly in front of his engine, but how they got there, or where they came from, he said he did not know. The record in my judgment conclusively shows negligence on the part of the deceased, and I think the judgment should be affirmed.